IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 2, 2009 Session

## STATE OF TENNESSEE v. MAURICE WILLIAMS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-06805     Chris Craft, Judge**

**No. W2008-01136-CCA-R3-CD  - Filed January 20, 2010**

The defendant, Maurice Williams, was convicted of carjacking and aggravated robbery, both Class B felonies, and sentenced to consecutive terms of twenty-eight years and twenty-five years, respectively.  On appeal, he argues that the trial court should have granted a new trial because of a variance between the allegations of the indictment and the trial proof; the proof was insufficient to sustain his convictions; and the trial court erred in application of an enhancement factor and ordering consecutive sentencing.  Following review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Charles S. Mitchell, Memphis, Tennessee, for the appellant, Maurice Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; William L. Gibbons, District Attorney General; and Colin A. Campbell and Dean DeCandia, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

Sam Ajami testified that he was employed as a loss prevention specialist by Mapco Express and that, at the time of the incidents charged in the indictment, he had been a Mapco district manager. He identified a DVD and a videotape bearing the date August 16, 2004, both from surveillance equipment at the Mapco located at 6127 Stage Road in Bartlett.

Lisa Marie Allen testified that on August 16, 2004, she was employed as a clerk at the Mapco Express on Stage Road in Bartlett. She said that a man wearing a sports jersey bearing the number 5 entered the store that day, purchased lottery tickets, went outside to scratch the tickets to see if they winners, and came back inside to redeem the tickets. She said that the man wearing the jersey came in and out of the store "a couple" of times and that she paid attention to him for about fifteen minutes and was "[c]ounter space close" to him. He had a tattoo on the right side of his neck that said "Love Maria" or "Marina." She identified the co-defendant, Vario Tally, from a photospread and in the courtroom as the assailant with the tattoo.

Allen said that there was a store room in the Mapco store, which contained cigarettes packed in cartons. There were "maybe a hundred cartons" which sold for $21.94 each at the time. As she was redeeming the lottery tickets for the man wearing the jersey, she heard a noise from the store room, looked into the room, and saw "a black guy standing there with the white shirt on." She said that the man in the store room was putting cartons of cigarettes into pillowcases. She asked what he was doing and "then he pull[ed] a gun out at me and said . . . that if I did anything or said anything he would shoot to kill me." She said that she "started screaming telling him to get out." He then "manhandled her," shoved her against an ice bin, and she "blacked out just for a moment." She said that she "grew up in the Marine Corps," and had "been around guns a lot." The assailant's pistol was black and "looked like a Glock 9 [millimeter]." She said that, when he threatened her, she was "[p]retty well shook up and scared as hell." As the man left with the cigarettes, she ran after him, yelling, and went as far as the front door of the store. She got a hand on one of the pillowcases as she was at the front door, and another customer tried to help her. The assailants "kept on saying, 'Shoot him. Shoot him,'" so they let go of the pillowcase. She said that there were four pillowcases which would have held more than fifty cartons of cigarettes.

Chad Adams testified that he was employed as an electrician at Ellendale Electric Company. He said that August 16, 2004, was the first day he attended International Electrical College, which was located behind the Mapco store in Bartlett. He was in a truck with Matt Mestemacher, with whom he was attending school. They went to the Mapco store to buy drinks for a break they had from classes. He said the parking lot was empty as they drove into it. Adams said that, as he entered the store, he heard "some rustling in the background and . . . a woman screaming[, 'Help, help.']" He said that "she was being drug by the bags." He "grabbed onto the bag [and] asked the fellow where he was going."

Adams said that there were two men involved, one appeared to be the lookout and the other came from behind the cash register. He said that they got into a tug-of-war over the bags, but he let go after one of the men said, "Shoot him, shoot him." The men left through

the door with the bags, got into Mestemacher's truck, and drove "very quickly" west on Stage Road toward Covington Pike. He said that he did not have a gun and did not see either of the men with one. Mestemacher stayed outside to telephone his mother to inform her that his truck had been stolen.

Charles Matt Mestemacher testified that he was employed by Ellendale Electric Company as an electrician and that, on August 16, 2004, he was attending school at International Electrical College, which was located behind the Mapco Express in Bartlett. He said that Chad Adams rode with him to the Mapco store and that he waited in his truck while Adams went inside. Three or four minutes later, an African-American man ran out of the Mapco store and told Mestemacher to get out of his truck or he would be shot. He said that the man who got into the driver's seat threw some bags into the back of the truck and that another man got in the passenger's seat. Mestemacher jumped out of his truck, and the two men drove away. He acknowledged that neither man pulled a gun on him.

Lieutenant Christopher Page of the Bartlett Police Department testified that he responded to an armed robbery call at the Mapco on Stage Road at approximately 7:00 p.m. on August 16, 2004. He spoke to Lisa Allen and viewed the surveillance video at the store. Lieutenant Page said he collected into evidence nine cartons of cigarettes from the Mapco store room, which were processed for latent prints. Lieutenant Page testified that a print lifted from one of the cartons of cigarettes belonged to the defendant, who was subsequently arrested and who gave a statement on June 16, 2006, admitting his involvement in the crimes.

Robert Davis, an Automated Fingerprint Identification System specialist with the Shelby County Sheriff's Department and accepted by the trial court as an expert in the field of fingerprint identification, testified that his examination of the defendant's fingerprint and the fingerprint lifted from one of the cigarette cartons showed that they were matches.

The defendant elected not to testify and rested his case without presenting any proof.

### ANALYSIS

On appeal, the defendant has raised three issues, asserting that: the trial court should have granted a new trial because of a variance between the allegations of the indictment and the trial proof; the evidence was insufficient to support his convictions; and the court erred in sentencing the defendant.

### I. Variance Between the Indictment and the Proof

The defendant argues that there was a fatal variance between count two of the indictment, charging him with a carjacking occurring on April 16, 2004, and the proof at trial, which showed that the offense had occurred on August 16, 2004. The State responds that the variance was neither material nor prejudicial.

In *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984), our supreme court adopted the test for determining whether a variance between the indictment and the proof at trial is fatal to the charge. The test in *Moss* states that:

> [u]nless substantial rights of the defendant are affected by a variance, he has suffered no harm, and a variance does not prejudice the defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, and (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense; all other variances must be considered to be harmless error.

*Id.*

We note that, while count two of the indictment incorrectly stated that the offense occurred on April 16, 2004, count one correctly alleged that the offense occurred on August 16, 2004. Additionally, we note that the defendant gave a statement to police officers on June 16, 2006, regarding the carjacking that occurred on August 16, 2004. Thus, we conclude that the defendant was neither surprised nor prejudiced when the State's proof showed that the carjacking had occurred on August 16.

## II. Sufficiency of the Evidence

The defendant argues that the evidence is insufficient as to the aggravated robbery, for, in his view, the testimony of the victim that the defendant "brandished a weapon runs contrary to her behavior thereafter." Further, he argues that, "had [the victim] been threatened with a gun in the storage room, [she] would not have chased [the defendant] and attempted to physically stop [him]." As to the carjacking, he argues that no witness identified him as one of the men responsible and that there was no evidence he was criminally responsible for the taking of the truck. The State disagrees with the defendant's arguments that the evidence was insufficient as to either of the convictions.

The defendant argues that the victim's subsequent actions were inconsistent with the defendant's having displayed a weapon to her. The jurors' verdict makes it apparent that they accredited the victim's testimony that the defendant was armed, and the record supports this determination.

As to the evidence of the carjacking, Chad Adams testified that he struggled with the man who was trying to leave the store with the cigarettes. In his statement, the defendant confessed to being one of those responsible for the theft of the cigarettes and struggling with Adams. Adams said that the man with whom he struggled then jumped into Mestemacher's truck with another man and drove away. From this proof, we conclude that a reasonable jury could have determined that the defendant and co-defendant fled the scene in Mestemacher's truck.

### III. Sentencing

### A. Application of Enhancement Factors

The defendant was sentenced as a Range III, persistent offender to twenty-five years for the aggravated robbery and to twenty-eight years for the carjacking, with the trial court ordering the sentences to be served consecutively.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401 (2006), Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999); *see also State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also Carter*, 254 S.W.3d at 344-45. In conducting a *de novo* review of a sentence, this court must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and argument as to the sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee's sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in his own behalf about sentencing. T.C.A. § 40-35-210(b) (2006); *see also Carter*, 254 S.W.3d at 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

At the sentencing hearing, the court found that the defendant had an extensive record of criminal activity, stretching over a number of years. The court found that he had been convicted in 1998 of both selling cocaine and possessing cocaine with the intent to sell, which the court counted as a single conviction since the offenses occurred on the same day. Also, in 1998, he was convicted of intentionally evading arrest in an automobile, the offense occurring in 1997. The court found that he had been convicted in 2001 of intentionally evading arrest in an automobile, for which he received a sentence of one year, and of theft over $10,000, which was committed on the same day, thus requiring that these be counted as a single offense. The defendant was convicted in 1993 of two offenses, theft over $1000 and attempted aggravated assault, committed on the same day. He was convicted in 1996 of facilitation to sell a controlled substance. In 2005, he was convicted in Missouri of theft over $500, which had been committed in 2004. The court also found that the defendant was convicted in Arkansas of battery in the second degree.

The court then explained how the prior convictions would be treated in sentencing the defendant:

> So I find that he has two prior C Felonies in Tennessee, two prior D Felonies in Tennessee, and a prior at minimum D Felony in Arkansas which would enhance his range to Range III as a persistent offender beyond a reasonable doubt. I also find that he has three E Felonies, two D Felonies and a C Felony, six more in addition to the five that enhance the range that would enhance his punishment within the range.

> I also find from his presentence report that he has other crimes, not felonies, which also could be used to find [the] enhancement factor that he has a previous history of criminal convictions or criminal behavior in addition to those five felonies to make him Range III that would enhance his punishment within the range.

Although the defendant argues on appeal that the trial court erred in relying on the facts of the underlying convictions in enhancing the sentences, it is apparent from our review of the record that the court enhanced the sentences because of the defendant's substantial history of prior convictions, in addition to the fact that he had previously been convicted of a felony involving bodily injury. The record supports these findings and the trial court's determinations that the sentences should be enhanced.

### B. Consecutive Sentencing

-6-

The defendant argues that the trial court erred in imposing consecutive sentences because they were based upon "judge found facts," rather than determinations made by the jury.

The court explained that the defendant was being sentenced to consecutive terms because he was a professional criminal and a dangerous offender, and it was necessary to protect society from him:

> I find that he has only worked a few months at two jobs in his life when he is now 33 years old. Those were menial jobs. And so I find that [the defendant] is a professional criminal who's knowingly devoted . . . his 33 years of life to criminal acts as a major source of livelihood. He's an offender whose record of criminal activity is extensive. And also I find that he's a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which [the] risk to human life is high.
>
> I also find the circumstances surrounding the commission of this offense are aggravating, in that, it happened in broad daylight with people in the store, two men descending on that store to rob it and then escaping and carjacking a man right outside the door to get away risking a lot of lives. This was not some crime against one person when no one else could be in danger to hurt. It was just a bold, bold, crime right in the middle of our city. I also find that confinement for an extended period of time is necessary to protect society from his unwillingness to lead a productive life and his resort to criminal activity in furtherance of an anti-societal life-style.
>
>          . . . .
>
> And I have no problem at all for all three of these different reasons in the statute to run these sentences consecutively, not the least of which is we need to protect the public from this man. So, therefore, the Court sentences [the defendant] to 25 years to the aggravated robbery, 28 years to the carjacking as a Range III Persistent Offender and run those sentences consecutively for the protection of the public.

With regard to consecutive sentencing, a court may order consecutive sentences if it finds by a preponderance of the evidence that:

> (1)      [t]he defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2)    [t]he defendant is an offender whose record of criminal activity is extensive;

. . . .

(4)    [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]

T.C.A. § 40-35-115(b) (2006); *see also Imfeld*, 70 S.W.3d at 708. Furthermore, in the event the trial court finds that the defendant is a "dangerous offender," it must also determine whether the consecutive sentences: (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. *State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995).

The record on appeal amply supports the determinations of the trial court that the defendant was a professional criminal with an extensive record of prior convictions and that lengthy incarceration was necessary to protect the public from him. Accordingly, we conclude that the record supports consecutive sentencing.[1]

## CONCLUSION

Based upon the foregoing, the judgments of conviction are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

---

[1]Although the defendant asserts that the trial court erred in ordering consecutive sentencing based upon determinations made by the court rather than a jury, the law is that such jury determinations are not required in consecutive sentencing. *State v. Allen*, 259 S.W.3d 671, 690 (Tenn. 2008); *see also Oregon v. Ice*, __ U.S. __, 129 S. Ct. 711 (2009).