LAW LIBRARY

NO. 28784

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

CR. NO. 06-1-1807
STATE OF HAWAII, Plaintiff-Appellee,
v.
HENRY PONCE JACINTO CALUCAG, JR., aka
Hank Jacinto, Defendant-Appellant

and

CR. NO. 07-1-0115
STATE OF HAWAII, Plaintiff-Appellee,
v.
HENRY PONCE JACINTO CALUCAG, JR., aka
Hank Jacinto, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding J., Fujise and Leonard, JJ.)

In this consolidated case, Defendant-Appellant Henry Ponce Jacinto Calucag, Jr., aka Hank Jacinto, (Calucag) appeals from the Judgments of Conviction and Sentence filed on September 7, 2007 in the Circuit Court of the First Circuit (circuit court)[1] in Cr. No. 06-1-1807 and Cr. No. 07-1-0115.

Plaintiff-Appellee State of Hawai'i (State) charged Calucag by indictment in Cr. No. 06-1-1807 with:

Count I, Identity Theft in the First Degree, in violation of Hawaii Revised Statutes (HRS) § 708-839.6(1)(b) (Supp. 2009);

Count II, Theft in the First Degree, in violation of HRS §§ 708-830.5(1)(a) (1993) and 708-830(1) (1993); and

Count III, Forgery in the Second Degree, in violation of HRS § 708-852 (Supp. 2009).

---

[1] The Honorable Michael A. Town presided.

The State also charged Calucag by indictment in Cr. No. 07-1-0015 with:

Count I, Use of a Computer in the Commission of a Separate Crime, in violation of HRS § 708-893(1)(a) & (2) (Supp. 2009);

Count II, Theft in the Second Degree, in violation of HRS §§ 708-831(1)(b) (Supp. 2005) and 708-830(2) (1993);

Count III, Fraudulent Use of a Credit Card, in violation of HRS § 708-8100(1)(c) (1993);

Count IV, Identity Theft in the Second Degree, in violation of HRS § 708-839.7 (Supp. 2009);

Count V, Fraudulent Use of a Credit Card, in violation of HRS § 708-8100(1)(c); and

Count VI, Fraudulent Use of a Credit Card, in violation of HRS § 708-8100(1)(c).

On February 27, 2007, the circuit court consolidated Cr. Nos. 06-1-1807 and 07-1-0115 for trial. A jury found Calucag guilty as charged on Counts I, II, and III of Cr. No. 06-1-1807 and Counts I, II, III, IV, and VI of Cr. No. 07-1-0115. The circuit court declared a mistrial as to Count V of Cr. No. 07-1-0115.

On September 7, 2007, the circuit court sentenced Calucag to the following:

In Cr. No. 06-1-1807: concurrent terms of imprisonment of 20 years, with a mandatory minimum term of 6 years and 8 months, for Count I; 10 years, with a mandatory minimum term of 3 years and 4 months, for Count II; and 5 years, with a mandatory minimum term of 1 year and 8 months, for Count III.

In Cr. No. 07-1-0115: concurrent terms of imprisonment of 10 years, with a mandatory minimum term of 3 years and 4 months, for Count I; 5 years, with a mandatory minimum term of 1 year and 8 months, for Count II; 5 years for Count III; 5 years, with a mandatory minimum term of 3 years and 4 months for Count

2

IV; and 5 years, for Count VI. These sentences were to be served consecutively to the sentences imposed in Cr. No. 06-1-1807.

On appeal, Calucag contends the circuit court reversibly erred by

(1) admitting evidence related to Pro Network Center because such evidence was not relevant under Hawaii Rules of Evidence (HRE) Rules 401 and 402 and was inadmissible character evidence under HRE Rules 403 and 404(b);

(2) denying his Motion for New Trial and for Judgment of Acquittal because in Counts I, II, III, and IV of Cr. No. 07-1-0115, the State failed to adduce substantial evidence that Calucag used a credit card belonging to John Elwin (Elwin) and transmitted Elwin's personal information via a computer to place an order with a company, fraudulently used Elwin's credit card without Elwin's consent, and committed the offense of forgery in the second degree;

(3) allowing the prosecutor during closing argument to make improper comments regarding Calucag's failure to introduce evidence to corroborate his defense, when Calucag had no burden to put on such evidence; and

(4) granting the State's Motion for Imposition of Consecutive Terms of Imprisonment because it is unconstitutional to impose consecutive sentences based on facts not specifically found by a jury.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we hold that (1) the evidence relating to Pro Network Center's website was not inadmissible character evidence because it was relevant to prove Calucag's fraudulent scheme; (2) there was substantial evidence to support the jury's verdicts; (3) the prosecutor's comments regarding the lack of evidence were not improper because the prosecutor did not suggest that Calucag had any burden of proof

or obligation to produce any evidence; and (4) it was not unconstitutional for the circuit court to impose consecutive sentences based on facts not specifically found by the jury.

(1)    Calucag contends the circuit court reversibly erred by admitting evidence showing that the information on the Pro Network Center website was false because such evidence was irrelevant under HRE Rules 401 and 402 and inadmissible character evidence under HRE Rule 404(b).

The State replies, and we agree, that the evidence was not introduced to show Calucag's bad character, but to rebut Calucag's explanation that Elwin transferred the Kalihiwai property to Calucag in exchange for a $372,000 loan.  The evidence that the information on the Pro Network Center website was false and that Calucag was not a successful businessman or respected computer consultant with important connections in the Department of Homeland Security, as the website portrayed, is relevant because it makes it less likely that Calucag had $372,000 to loan Elwin.  The evidence makes it more likely that Calucag intended to defraud Elwin of the Kalihiwai property and is thus relevant to show that Calucag had the requisite criminal intent to take unauthorized control of the property.

Calucag argues that even if the evidence were probative of an issue that is of consequence to the determination of the action, the circuit court should have excluded the evidence because its probative value was outweighed by its prejudicial impact under HRE Rule 403.  He argues that the circuit court made no effort to make this determination.  We disagree.

The circuit court's concern about the prejudicial effect of the evidence is reflected in its limiting instruction to the jury, and its reiteration of that limiting instruction at the end of the trial, that any evidence concerning Calucag's prior bad acts must not be considered for the purposes of concluding that he was "a person of bad character and, therefore, must have committed the offenses charged in this case" and that

the evidence should only be considered on the issue of his motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. Any potential prejudice was cured by the circuit court's limiting instruction.

(2) Calucag contends the circuit court reversibly erred by denying his Motion for New Trial and for Judgment of Acquittal because the State failed to adduce substantial evidence that Calucag (1) used Elwin's credit card and transmitted on a computer Elwin's personal information to place an order, (2) fraudulently used Elwin's credit card without Elwin's consent, and (3) committed the offense of forgery in the second degree. There was substantial evidence to support the jury's verdicts. "'Substantial evidence' . . . is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." State v. Richie, 88 Hawai'i at 19, 33, 960 P.2d 1227, 1241 (1998) (internal quotation marks and citation omitted).

Although there was no eyewitness testimony or video footage of Calucag placing the internet order, "[i]t is a basic rule . . . that guilt in a criminal case may be proved beyond a reasonable doubt on the basis of reasonable inferences drawn from circumstantial evidence. No greater degree of certainty is required where a conviction is based solely on circumstantial evidence rather than on direct evidence." State v. Bright, 64 Haw. 226, 228, 638 P.2d 330, 332 (1981) (citations omitted).

First, Calucag asserts the State only showed that someone other than Elwin used Elwin's credit card and transmitted Elwin's personal information to place an order with The Tackeria on a computer, but not that Calucag was the one who placed that order.

However, there was sufficient evidence to support the jury's conclusion that Calucag placed the order. It was reasonable for the jury to infer that Calucag placed the

fraudulent order on the internet from the following evidence: the fraudulent order was placed on June 6, 2006 (after Elwin's death) for polo merchandise from The Tackeria; the polo merchandise was shipped to the Pro Network Center address at 1750 Kalakaua Avenue, a mailbox to which Calucag and Elwin had access; Calucag picked up the order from the mailbox in June 2006; Calucag was a polo player; and Calucag did not tell any of Elwin's friends or family members about the order when they asked him if he had heard from or had any information about Elwin.

Second, Calucag asserts the State did not present any direct evidence that Calucag fraudulently used Elwin's credit card without Elwin's consent. However, it was reasonable for the jury to infer from the following evidence that Calucag fraudulently used Elwin's credit card: when the person called Tato's Custom Mallets and left a message checking on the order, the caller ID provided Pro Network Center's phone number; Calucag is the owner of Pro Network Center; the person who called and changed Elwin's order also changed the delivery address to 1750 Kalakaua Avenue and telephone number to Pro Network Center's number; and the person who called Tato's after Elwin's order had been delivered, complained about the quality of mallets because they knew that if a mallet was too thin, it could break on impact while used to play polo.

Finally, Calucag asserts the State did not present any direct evidence that he committed the offense of Forgery in the Second Degree by transferring the Kalihiwai property from Elwin's name to his name via a fraudulent warranty deed. However, it was reasonable for the jury to infer from the following evidence that Calucag committed second degree forgery: Elwin's sister-in-law testified that Elwin owned the Kalihiwai property and planned to leave it to his daughter after his death; Elwin's brother testified that prior to leaving for the Philippines, Elwin had him draft plans for a house on the Kalihiwai property, got estimates to put in a septic system and had started putting in

the system, and hired a company to run utilities on the property; Elwin's girlfriend testified that she had never heard him say he wanted to sell the Kalihiwai property, the property was to go to his daughter upon his death, and he was still planning to build a house on the property; even as late as April 30, 2006, Elwin told his friend that he did not want to sell the property; in his will, Elwin left the property to his daughter; Calucag never gave Elwin anything of economic value in exchange for the property; Calucag's bank records showed that from 2003 to 2006 he did not have $370,000 available to loan Elwin; and on June 16, 2006, Calucag told a police officer that he did not know if Elwin owed money to anyone.

Because the jury found beyond a reasonable doubt that Calucag was guilty of theft of the property, there was sufficient evidence for the jury to find that Calucag, at the very minimum, uttered a forged instrument when he filed the Warranty Deed with the Bureau of Conveyances, an element of second degree forgery. See HRS § 708-852. Therefore, we hold that there was substantial evidence to support the jury's verdict.

(3) Calucag contends the circuit court erred by allowing the prosecutor to make improper comments regarding Calucag's failure to introduce evidence to corroborate his defense, when he had no burden to put on such evidence. He argues that the prosecutor improperly shifted the burden of proof to Calucag by stating that there was no evidence that Elwin received any money in exchange for the Kalihiwai property.

However, the prosecutor legitimately commented on the evidence and on reasonable inferences. The prosecutor pointed out that there was no evidence Elwin received any tangible goods or money from Calucag in exchange for the allegedly legitimate transfer of Kalihiwai property. The prosecutor never made any comments about whether or not Calucag took the witness stand to testify on his own behalf nor did the prosecutor suggest that Calucag had any burden of proof or obligation to produce any

evidence. The prosecutor merely commented that there was no evidence of the alleged exchange, and drew the inference from this lack of evidence that no legitimate exchange occurred. "It is . . . within the bounds of legitimate argument for prosecutors to state, discuss, and comment on the evidence as well as to draw all reasonable inferences from the evidence." State v. Rogan, 91 Hawai‘i 405, 412-13, 984 P.2d 1231, 1238-39 (1999) (internal quotation marks and citation omitted). Therefore, we hold that there was no prosecutorial misconduct.

(4) Calucag contends the circuit court erred in granting the State's August 13, 2007 motion for imposition of consecutive sentences because it is unconstitutional to impose consecutive sentences based on facts not specifically found by a jury. He argues that his consecutive sentence has the effect of increasing his sentence beyond the statutory maximum, and thus, the facts found by the judge in imposing the consecutive sentence that were not presented to the jury and proved beyond a reasonable doubt violated the Apprendi rule. The Apprendi rule states: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

Last year, the United States Supreme Court reviewed this issue in Oregon v. Ice, __ U.S. __, __, 129 S. Ct. 711, 718 (2009), and held that it does not violate the Apprendi rule:

> In light of this history, legislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in Apprendi. There is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the State and the accused. Instead, the defendant -- who historically may have faced consecutive sentences by default -- has been granted by some modern legislatures statutory protections meant to temper the harshness of the historical practice.

The Hawai‘i Supreme Court decided this issue in State v. Kahapea, 111 Hawai‘i 267, 278-80, 141 P.3d 440, 451-53 (2006),

8

where it agreed with other jurisdictions that "aphoristically dismissed the proposition that either <u>Blakely</u> or <u>Apprendi</u> proscribes consecutive term sentencing." <u>Kahapea</u>, 111 Hawai'i at 279, 141 P.3d at 452.

The circuit court did not err in granting the State's motion for consecutive sentences.

Therefore,

IT IS HEREBY ORDERED that the Judgments of Conviction and Sentence filed on September 7, 2007 in the Circuit Court of the First Circuit in Cr. No. 06-1-1807 and Cr. No. 07-1-0115 are affirmed.

DATED: Honolulu, Hawai'i, February 17, 2010.

On the briefs:

James S. Tabe,
Deputy Public Defender,
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge