[Cite as *State v. Marcum*, 2012-Ohio-2721.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 10 CO 17 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION AND |
| | ) | JUDGMENT ENTRY |
| J.C. JOHN MARCUM | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Motion to Reopen Direct Appeal

JUDGMENT:      Overruled.

APPEARANCES:

For Plaintiff-Appellee:

Atty. Robert Herron
Columbiana County Prosecutor
Atty. John E. Gamble
Assistant Prosecuting Attorney
105 South Market Street
Lisbon, Ohio  44432

For Defendant-Appellant:

J.C. John Marcum, Pro se
#583-801
Belmont Correctional Institution
P.O. Box 540
St. Clairsville, Ohio  43950

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  June 13, 2012

PER CURIAM

{¶1}    Appellant, J.C. John Marcum, Jr., has already appealed his Columbiana County convictions of assault on a peace officer and aggravated burglary.  In his original appeal, Appellant challenged the sufficiency and the weight of the evidence against him on both charges.  He also challenged the admission of what he alleged to be hearsay evidence and claimed prosecutorial misconduct during trial and in closing.  On review, we found sufficient evidence on each element of the offenses charged and that the conviction was not against the weight of the evidence.  Because the alleged hearsay evidence was not offered for the truth of the matter asserted, it was not hearsay within the meaning of the rule.  While the prosecutor's conduct was not ideal, it did not rise to the level of misconduct resulting in prejudice that necessitated reversal.  We affirmed the judgment of the trial court in full.

{¶2}    Appellant has now filed a timely application to reopen his appeal, to which the state has not responded.  The time for response has passed and we will consider the matter on Appellant's motion alone.  Appellant now contends that he received ineffective assistance of appellate counsel because counsel did not challenge the duration of his sentence and did not challenge the imposition of consecutive sentences.  Although in Appellant's first assignment of error he refers to the word "sentence" in the singular, he does not specify which of the two sentences imposed he seeks to challenge.  Appellant offers no reason, argument, or law supporting his contention that the "[s]everity of the sentence does not match the the [sic] offense pursuant to [R.C.] 2929.11 et seq." nor does he identify on what, within the approximately forty-two subsections of R.C. 2929 encompassed by "2929.11 et

seq.," he is relying in making his argument. (1/3/12 Motion to Reopen, Assignments of Error Nos. 1 and 2.) Similarly, Appellant does not offer any reason why the imposition of consecutive sentences is unlawful in this instance. Appellant includes a third assignment of error where he asserts that appellate counsel has not been in regular contact with him. The presence, absence, or quality of contact between attorney and client is not a legal or factual error properly before this Court on an application to reopen an appeal. Hence, we address what Appellant identifies as errors number one and two only to the extent that they refer to legal or factual issues that may be considered by a reviewing court.

{¶3} Appellate Rule 26(B) governs applications for reopening. The rule provides: "A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel." App.R. 26(B)(1). The defendant seeking to reopen must provide "[o]ne or more assignments of error * * * that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation." App.R. 26(B)(2)(c). The applicant must also provide a "sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error * * * and the manner in which the deficiency prejudicially affected the outcome of the appeal." App.R. 26(B)(2)(d).

{¶4} To justify reopening his appeal, Appellant "bears the burden of establishing that there was a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal." *State v. Spivey*, 84 Ohio St.3d 24,

25, 701 N.E.2d 696 (1998), *accord State v. Sheppard*, 91 Ohio St.3d 329, 744, N.E.2d 770 (2001). "The two-pronged analysis found in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is the appropriate standard to assess whether [Appellant] has raised a 'genuine issue' as to the ineffectiveness of appellate counsel in his request to reopen under App. R. 26(B)." *Sheppard* at 330. To prevail on a claim of ineffective assistance of counsel Appellant must show not only that counsel's performance was deficient, but also that he was prejudiced by that deficiency. *Strickland, supra*; *see also State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶107. "Deficient performance" is performance that falls below an objective standard of reasonable representation. "Prejudice," in this context, is defined as a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland* at 687-688, 694. Moreover, in evaluating the performance of counsel, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-691. In support of an application for reopening Appellant must "prove that his counsel [was] deficient for failing to raise the issues he now presents and that there was a reasonable probability of success had he presented those claims on appeal." *Sheppard, supra,* at 330, citing *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶5} Appellant was charged with and convicted of assaulting a peace officer while in the commission of his duties, a violation of R.C. 2903.13(C)(3), which

provides: "No person shall knowingly cause or attempt to cause physical harm to another * * * [i]f the victim of the offense is a peace officer * * * while in the performance of their official duties, assault is a felony of the fourth degree."

{¶6} Appellant was also convicted of aggravated burglary, a violation of R.C. 2911.11(A), which provides: "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offence, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another."

{¶7} Pursuant to R.C. 2911.11, the distinction between "burglary" and "aggravated burglary" is the element of physical harm in or accompanying the criminal offense committed or to be committed within the occupied structure. In conjunction with the aggravated burglary, Appellant was charged with aggravated menacing, a violation of R.C. 2903.21(A), which states, "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." A conviction on aggravated menacing satisfies the harm element of aggravated burglary. A guilty verdict on each count was returned by the jury on May 4, 2010. Appellant was sentenced and judgment entered on May 5, 2010. Appellant received fourteen months of incarceration on the assault charge and nine years on the aggravated burglary charge, to be served consecutively.

{¶8} Ohio sentencing ranges and sentencing goals are established by the legislature. In 1996 the Ohio legislature passed a comprehensive sentencing reform

bill, intended to provide truth in sentencing by introducing certainty and proportionality to felony sentencing. 146 Ohio Laws, Part IV, 7136, effective July 1, 1996 ("S.B. 2"); *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶34. The resulting scheme included both over-arching purposes for felony sentencing, R.C. 2929.11, and factors for a court to consider, R.C. 2929.12, when exercising its discretion in compliance with the principles and purposes established by the legislature. *Foster*, ¶36-42. The legislation established presumptions for and against prison terms and community control as well as requirements that the trial court make specific findings before imposing more than a minimum or maximum prison term and when imposing consecutive sentences. All provisions of S.B. 2 were applicable only to offenses committed on or after July 1, 1996. *State v. Rush*, 83 Ohio St.3d 53, 697 N.E.2d 634 (1998), paragraph two of the syllabus.

**{¶9}** Subsequent to Ohio's sentencing reform a majority of the United States Supreme Court held, in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that any fact used to increase the penalty for a crime beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt whether the sentence is imposed at the federal or at the state level. *Id.* at 476. "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Id.* at 490. Applying these principles the United States Supreme Court found unconstitutional a New Jersey hate crime statute that allowed a trial judge to impose an extended term of imprisonment if the trial judge found by a preponderance of the evidence at sentencing that the defendant was convicted of a crime committed

with the purpose to intimidate an individual or group due to his, her, or their, race, color, ethnicity, gender, sexual orientation, religion, or disability. *Id.* at 468-469.

**{¶10}** Subsequently, in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the same majority invalidated a Washington state case in which the trial court imposed an "exceptional" sentence after a judicial determination that the defendant had acted with "deliberate cruelty" resulting in a total sentence of ninety months, thirty-seven months longer than the maximum penalty that could otherwise be imposed for a "Class-B" felony in Washington at that time. *Id.* at 297-298. The Washington statute, like the New Jersey statute, required the trial judge to make a specific factual finding before imposing a penalty beyond the statutory maximum for the conviction and therefore violated the Sixth Amendment. The *Blakely* Court emphasized that the relevant statutory maximum when evaluating the constitutionality of a sentencing statute or sentence under *Apprendi* "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." (Emphasis sic.) *Id.* at 303-304. Whether, under the relevant statutory scheme, a "judge's authority to impose an enhanced sentence depends on finding a specified fact * * * one of several specified facts * * * or *any* aggravating fact * * * it remains the case that the jury's verdict alone does not authorize the sentence" because "[t]he judge acquires that authority only upon finding some additional fact." (Emphasis sic.) *Id.* at 305.

**{¶11}** Both *Apprendi* and *Blakely* refute the use of sentencing enhancements that require judicial fact-finding, however, both opinions also emphasize that while judicial fact-finding is prohibited by the Sixth Amendment, judicial discretion is not. In

*Apprendi* the Court explained that "nothing in history suggests that it is impermissible for judges to exercise discretion - taking into consideration various factors relating both to offense and offender - in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case." (Emphasis sic*.*) *Apprendi* at 481. In *Blakely* the majority reiterates that statutory schemes that allow judicial discretion in sentencing but do not compel judicial fact finding are constitutional. *Blakely* at 305.

{¶12} Applying the principles of *Apprendi* and *Blakely*, the United States Supreme Court determined that the sentencing guidelines promulgated by the federal sentencing commission under the 1984 Sentencing Reform Act violated the Sixth Amendment. *U.S. v. Booker*, 543 U.S. 220, 226, 125 S.Ct. 738, 160 L.Ed.2d 261 (2005). The *Booker* Court stated "[w]e have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range;" "[i]f the Guidelines as currently written could be read as merely advisory * * * their use would not implicate the Sixth Amendment." *Id.* at 233. The remedy the *Booker* Court devised, having determined that the provisions of the statute were severable, was to sever and invalidate the portions of the Sentencing Reform Act of 1984 that had the effect of making the Guidelines mandatory. *Id.* As a result, the sentencing scheme now grants full discretion to federal judges to impose any sentence allowed under the statutory range without making specific findings. "[D]istrict courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing" which helps "to avoid excessive sentencing disparities, while

maintaining flexibility sufficient to individualize sentences where necessary." *Id.* at 264-265.

**{¶13}** The Ohio Supreme Court applied *Apprendi, Blakely*, and *Booker* to Ohio's Sentencing Reform Act, S.B. 2, in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. The Court conducted an analysis similar to that found in *Booker* and held that the sections of Ohio's Sentencing Reform Act governing the imposition of more than minimum terms, maximum terms, consecutive terms, penalty enhancements for repeat violent offenders and major drug offenders, and the imposition of consecutive prison terms all violated the Sixth Amendment by requiring judicial fact-finding. The Court determined that these provisions were severable. The purposes of felony sentencing, established by R.C. 2929.11, and the seriousness and recidivism factors included in R.C. 2929.12, both of which were stated in general terms and did not require findings, were undisturbed by the *Foster* Court's analysis. The Court concluded its analysis by holding that "judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant"; "judicial fact-finding is not required before imposition of consecutive prison terms"; and "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Foster* at ¶99-100. After *Foster*, Ohio trial court judges "have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for

imposing * * * consecutive [sentences]." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, paragraph three of the syllabus.

{¶14} Three years after the Ohio Supreme Court found the Ohio consecutive sentencing provisions unconstitutional, the United States Supreme Court ruled in *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009), that a state statute requiring judicial findings prior to the imposition of consecutive sentences did not violate the Sixth Amendment under *Blakely* and *Apprendi*. The Court evaluated the statutory scheme adopted by *Oregon*, which provides that sentences run concurrently unless the judge finds statutorily described facts which permit, but do not require, consecutive terms. The Court held that because the elements of the individual sentences were found beyond a reasonable doubt, by a jury, the sentencing provision did not implicate the due process concerns raised by the sentencing enhancements involved in *Blakely* and *Apprendi* and their predecessors.

{¶15} The Ohio State Supreme Court then revisited *Foster* in *State v. Hodge*, and found "[t]he United States Supreme Court's decision in *Oregon v. Ice* * * * does not revive Ohio's former consecutive-sentencing statutory provisions * * * which were held unconstitutional in *State v. Foster*," and therefore "[t]rial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made." (Internal citations omitted.) *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, paragraphs two and three of the syllabus. In 2011 the Ohio Legislature passed H.B. 86, effective September 30, 2011, which re-codified the exact conditional language severed from R.C. 2929.14(E)(4) by the Ohio Supreme Court in

*Foster.* No further decision on the issue of consecutive sentences has been released by the Ohio Supreme Court since *Hodge* and the subsequent re-enactment of R.C. 2929.14(E)(4).

**{¶16}** Appellant was tried and convicted of offenses committed on December 9, 2009. The offenses occurred three years after the Ohio Supreme Court invalidated the consecutive sentencing provisions of R.C. 2929.14(E)(4) and the more than minimum sentencing requirements of R.C. 2929.14(B) in *Foster* and two years before the consecutive sentencing provisions were re-codified by the legislature. The sentencing provisions in effect when Appellant committed assault and aggravated burglary and applicable to his sentence are those enacted by the legislature in S.B. 2, as amended by the Supreme Court in *Foster*. At the time, under R.C. 2929.14 the penalty range for assault on a peace officer, a fourth degree felony, was six to eighteen months and the penalty range for aggravated burglary, a first degree felony, was three to eleven years. Appellant was sentenced to fourteen months for the assault and nine years for the aggravated burglary. Both sentences were within the applicable statutory ranges.

**{¶17}** Under *Foster*, *Mathis*, *Blakely*, and *Apprendi* the trial court has complete discretion to impose a sentence within the statutory range. The trial court could have exercised its discretion in this instance to impose a maximum of eighteen months for the assault and a maximum of eleven years for the aggravated burglary. It did not choose to do so. There is nothing in this record that suggests error with regard to sentences within the statutory range. Appellate counsel's decision not to challenge the duration of Appellant's sentences and the application of consecutive

sentences is not error where, as here, the sentences were entirely compliant with applicable law. Appellant was in no way prejudiced by the fact that appellate counsel did not raise an argument that had no chance of success. Based on the record before us, appellate counsel's performance was not deficient.

**{¶18}** Appellant received effective assistance of counsel in his appeal. There was no reasonable probability of success had counsel challenged the duration and consecutive application of Appellant's sentences. Accordingly, Appellant's application for reopening is denied.

Waite, P.J., concurs.

Vukovich, J., concurs.

DeGenaro, J., concurs.