

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0851-14 & PD-0852-14

### REGINALD NIXON, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### TARRANT COUNTY

**YEARY, J., filed a dissenting opinion in which KELLER, P.J., joined.**

### <u>DISSENTING OPINION</u>

The import of the Court's holding today distills down to one sentence excerpted from

its opinion:

> Because the jury's handwritten additions to the verdict form were clearly intended to control how the nine- and seven-year terms of confinement were to be served—in essence, insuring [Appellant] would be incarcerated for sixteen years—the jury intended that the cumulation serve a punitive purpose, and those additions should be considered punishment.

Majority Opinion at 13. It is not clear to me, however, that the meaning of the word

"punishment" in Article 37.10(b) is best determined by deferring to what the jury thought it

was accomplishing by its conditional approach to sentencing in this case. Just because a jury has attempted to usurp a function institutionally assigned to the trial court during the punishment phase of trial, it does not mean that it has necessarily "assesse[d] . . . punishment that is not authorized by law for the offense," for purposes of construing this mandatory statute. To read the statutory mandate so sweepingly deprives trial courts of desirable flexibility in handling the potential variety of anomalies that may crop up from time to time in jury verdicts. I would hold, instead, that the jury's purported punishment verdict in this case was an "informal" one that triggered the application of Subsection (a) of Article 37.10, not Subsection (b). However, because the trial court failed to adhere to the requirements of Article 37.10(a), I would remand the cause to the court of appeals for further consideration. Instead, the Court reforms the judgment to reflect concurrent seven- and nine-year sentences. I respectfully dissent.

The word "punishment" appears no fewer than five times in the first sentence of Article 37.10(b):

> If the jury assesses punishment in a case and in the verdict assesses both punishment that is authorized by law for the offense and punishment that is not authorized by law for the offense, the court shall reform the verdict to show the punishment authorized by law and to omit the punishment not authorized by law.

TEX. CODE CRIM. PROC. art. 37.10(b). The Court holds today that if the jury's penalty phase verdict in any way seems to "serve a punitive purpose" beyond what is expressly authorized (presumably under Chapter 12 of the Penal Code), then it has "assessed" an unauthorized

"punishment," and the trial court's response must be governed by Article 34.10(b). Such a construction of the statute is neither compelled nor, in my view, appropriate.

The decision whether multiple sentences should be made to run concurrently or consecutively does not constitute an "assess[ment]" of "punishment." It is more in the nature of an unavoidable administrative determination with respect to how "punishments" that have already been "assesse[d]"—by whichever entity, judge or jury—shall be imposed.[1] The decision to cumulate sentences is certainly not regarded as an "increase" in the "maximum punishment authorized for a particular offense" to which a defendant may find himself susceptible. *See Oregon v. Ice*, 555 U.S. 160, 163 (2009) (the Sixth Amendment does not prohibit a state from assigning fact finding that determines whether multiple sentences are to run concurrently or consecutively to the trial judge rather than to the jury). The

---

[1] I say "unavoidable" because, as long as trial courts have discretion whether to impose sentences concurrently or consecutively, that decision must be made by some entity at some point. Early on, trial courts in Texas were actually *required* by statute to cumulate separate sentences; they had no discretion to do otherwise. *See, e.g.*, *Smith v. State*, 34 Tex. Cr. R. 123, 123-24, 29 S.W. 774, 775 (1895) ("Nor is there anything in the alleged error of the court making the sentence in this case cumulative of that pronounced against appellant in a preceding conviction. This action of the court is expressly enjoined by statute, and therefore the court did not err in this respect. Code Cr. Proc. [Article] 800 [1879]."); *Cullwell v. State*, 70 Tex. Cr. R. 596, 598, 157 S.W. 765, 766 (1913) (quoting Article 862 of the 1911 Code of Criminal Procedure, which was identical to former Article 800). The Legislature revised the statute in 1919, however, to authorize trial courts to impose either consecutive or concurrent sentences, at their untethered discretion. Acts 1919, 36th Leg., ch. 20, § 1, p. 25, approved Feb. 19, 1919 (amending Article 862 of the 1911 Code of Criminal Procedure). *See, e.g.*, *Carney v. State*, 573 S.W.2d 24, 27 (Tex. Crim. App. 1978) ("There is no 'right' to a concurrent sentence; whether punishment will run concurrently or cumulatively is within the discretion of the trial judge."). That provision may presently be found in Article 42.08(a) of the Code of Criminal Procedure, and it is echoed in Section 3.04(b) of the Penal Code. TEX. CODE CRIM. PROC. art. 42.08(a); TEX. PENAL CODE § 3.04(b). Thus, trial judges in Texas have had the authority to *cumulate* sentences from the beginning; and, since 1919, they have also had the authority to order separate sentences to run *concurrently*.

"punishment" that has been "assess[ed]" remains the same: a separate term of confinement in the penitentiary, of definite duration, for each discrete offense. In my view, a jury's punishment verdict that goes on to attempt to usurp the trial court's function to decide *how* to carry out the definite "punishment[s]" it has "assess[ed]" does not amount to the "assess[ment]" of additional "punishment" so as to trigger Article 37.10(b).[2] The Court cites nothing to the contrary.

I would construe the jury's conditional penalty phase verdict in this case to be "informal," in the sense that it strayed from the "formal" verdict form the trial court gave it at the conclusion of the jury charge. "A 'verdict' is a written declaration by a jury of its decision of the issue submitted to it in the case." TEX. CODE CRIM. PROC. art. 37.01.[3] In our modern universal practice, a "formal" verdict is typically the written form submitted to the jury at the end of the jury charge, to be filled in as appropriate in keeping with the jury's "decision." The present Code provision governing "informal" verdicts, like the definition of

---

[2] I wonder whether the Court's holding today—that cumulation of sentences constitutes an additional "assess[ment]" of "punishment" (albeit punishment that the *jury* is not "unauthorized" to mete it out)—might undermine our earlier pronouncement in *Barrow v. State*, 207 S.W.3d 377 (Tex. Crim. App. 2006), that the Sixth Amendment right to a jury trial is not implicated? I would think the Court would prefer to construe Article 37.10 in a way that avoids that constitutional can of worms.

[3] *See Berghahn v. State*, 683 S.W.2d 697, 699 (Tex. Crim. App. 1984) (Clinton, J., dissenting on original submission) (observing that "[o]ur present code of criminal procedure provides, and probably all its predecessors did as well, that a verdict is 'a written declaration by a jury of its decision of the issue submitted to it . . .'"). Indeed, going back at least as far as the 1879 Code of Criminal Procedure, former Article 705 provided that "[a] verdict is a declaration by a jury of their decision of the issues submitted to them in the case, and it must be in writing and concurred in by each member of the jury."

"verdict" itself, goes back to the earliest criminal codes in Texas.[4] Of the various dictionary definitions of the word "informal," the one that seems to me to be the most natural fit, in the context of the evident purpose of Article 37.10(a), is as follows: "Not done or made according to a recognized or prescribed form; not observing forms; not according to order; irregular; unofficial, disorderly." 1 THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY: COMPLETE TEXT REPRODUCED MICROGRAPHICALLY, at 1432 (Oxford University Press 1971). *Black's* definition is similar: "Not done or performed in accordance with normal forms or procedures." BLACK'S LAW DICTIONARY, at 898 (10th ed. 2014). A jury verdict at the punishment phase of trial that fills in the blanks on the supplied form as

---

[4] The 1879 Code, echoing the so-called "Old Code" of 1856, broke the statutory proscription into two segments, Articles 715 and 716. These read:

> ART. 715. If the jury find a verdict which is informal their attention shall be called to it, and, with their consent, the verdict may, under the direction of the court, be reduced to proper form.

> ART. 716. If the jury refuse to have the verdict altered they shall again retire to their room to deliberate, unless it manifestly appear that the verdict is intended as an acquittal, and in that case the judgment shall be rendered accordingly, discharging the defendant.

Every succeeding code of criminal procedure up to the present time carried this provision forward, with minor, non-substantive amendments. Article 37.10(a) presently reads:

> (a) If the verdict of the jury is informal, its attention shall be called to it, and with its consent the verdict may, under the direction of the court, be reduced to the proper form. If the jury refuses to have the verdict altered, it shall again retire to its room to deliberate, unless it manifestly appear that the verdict is intended as an acquittal; and in that case, the judgment shall be rendered accordingly, discharging the defendant.

TEX. CODE CRIM. PROC. art. 37.10(a).

appropriate, but then drops a footnote to indicate that the jury's "decision" as so indicated is a qualified one—contingent on some fact or circumstance over which the jury has no interest or control—strikes me as the quintessential "informal" verdict according to these dictionary definitions.[5]

This is not to say that it would necessarily have been inappropriate for the trial court simply to accept the punishments that the jury originally assessed—seven years' confinement for the burglary offense and nine years' confinement for the evading arrest offense—as the Court does today. But it could not do so, under the express terms of Article 37.10(a), without first obtaining the consent of the jurors. Only if the jury had refused to relinquish its footnoted qualification upon its assessment of the punishments for the respective offenses would it have been appropriate for the trial court to "again retire [it] to its room to deliberate" further. TEX. CODE CRIM. PROC. art. 37.10(a). Had the jury, upon inquiry, explicitly consented to the seven- and nine-year sentences and withdrawn its attempted qualification,

---

[5] Prior case law defines "informal" consistently with these dictionary definitions. "A verdict . . . may not be conditional, qualified, speculative, inconclusive, or ambiguous." *Eads v. State*, 598 S.W.2d 304, 306 (Tex. Crim. App. 1980). When a jury verdict is "conditional" or "qualified," we have applied what is now Article 37.10(a) to hold that "it is the duty of the trial judge to reject [it as] an informal or insufficient verdict, call to the attention of the jury the defect, informality or insufficiency, and either have the same corrected with their consent, or retire them again to consider of their verdict." *Id*. It is true that *Eads* preceded the addition of Article 37.10(b). And when a jury verdict unambiguously, unconditionally, and unqualifiedly purports to assess a punishment that the jury has no power to impose, Section (b) ought now to apply. Here, however, the jury assessed punishments that were wholly within its power—but then qualified these assessments. At the time at which the jury first returned this conditional, quintessentially "informal" verdict, the trial court could not have known whether, absent that attempted qualification, the jury would necessarily have assessed different punishments within the prescribed range. It should have followed the dictates of Article 37.10(a) to address this informality.

I would agree that the Court's ultimate disposition today would be the correct one.

Thus, while I agree that the record demonstrates that the trial court committed error, the error was in failing to follow the dictates of Section (a) of Article 37.10, not Section (b). How would I dispose of the case in light of this error? I would remand the cause to the court of appeals to address four remaining issues in the first instance—or at least as many of these four issues as it should find necessary to dispose of the case. First and second, was the trial judge's error—specifically, failing to adhere to Article 37.10(a)'s requirement that he seek the jury's consent to abandon its qualification of its punishment verdict before returning it to deliberate—subject to ordinary principles of error preservation, and if so, were Appellant's complaints at trial sufficient to preserve the error under Rule 33.1 of the Texas Rules of Appellate Procedure?[6] TEX. R. APP. P. 33.1. Third and fourth, was the error subject to a harm analysis, and if so, does the record reveal that the error is reversible under the appropriate provision of Rule 44.2 of the Texas Rules of Appellate Procedure? TEX. R. APP. P. 44.2. I

---

[6] An appellate court may not reverse a conviction without first addressing any issue of error preservation that might be presented by the record. *Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012). When first asked how he would have the trial court respond to the jury's conditional verdict, Appellant requested the trial court to "instruct *them* to strike the surplusage on their verdict and return it in *proper form*." (Emphasis added.) He did not ask the trial court to simply reform the verdict on its own, under the terms of Article 37.10(b). Rather, his request for the trial court to have the *jury* return a verdict in the "*proper form*" more closely resembles the procedure spelled out in Article 37.10(a)—except that it would have had the trial court skip the first step of asking the jury for its *consent* to reduce the verdict "to the proper form." Later, the Appellant simply asked for a mistrial. But he ultimately "implore[d] the Court to accept the original verdict as presented in *proper form*." (Emphasis added.) Again, however, he failed to suggest that the trial court first obtain the jury's consent. Whether this should be found to amount to a procedural default is a question I would leave to the court of appeals to resolve in the first instance.

offer no opinion how any of these issues ought to be resolved and would urge the court of appeals to accept additional briefing from the parties, at its discretion.

Because the Court does not remand the cause for these additional inquiries, but persists instead in finding error under Article 37.10(b), and then correcting that error itself by reforming the judgments, I respectfully dissent.


FILED:         February 24, 2016
PUBLISH