*163 Justice Ginsburg
delivered the opinion of the Court.
This case concerns the scope of the Sixth Amendment’s jury-trial guarantee, as construed in Apprendi v. New Jersey, 530 U. S. 466 (2000), and Blakely v. Washington, 542 U. S. 296 (2004). Those decisions are rooted in the historic jury function — determining whether the prosecution has proved each element of an offense beyond a reasonable doubt. They hold that it is within the jury’s province to determine any fact (other than the existence of a prior conviction) that increases the maximum punishment authorized for a particular offense. Thus far, the Court has not extended the Apprendi and Blakely line of decisions beyond the offense-specific context that supplied the historic grounding for the decisions. The question here presented concerns a sentencing function in which the jury traditionally played no part: When a defendant has been tried and convicted of multiple offenses, each involving discrete sentencing prescriptions, does the Sixth Amendment mandate jury determination of any fact declared necessary to the imposition of consecutive, in lieu of concurrent, sentences?
Most States continue the common-law tradition: They entrust to judges’ unfettered discretion the decision whether sentences for discrete offenses shall be served consecutively or concurrently. In some States, sentences for multiple of *164 fenses are presumed to run consecutively, but sentencing judges may order concurrent sentences upon finding cause therefor. Other States, including Oregon, constrain judges’ discretion by requiring them to find certain facts before imposing consecutive, rather than concurrent, sentences. It is undisputed that States may proceed on the first two tracks without transgressing the Sixth Amendment. The sole issue in dispute, then, is whether the Sixth Amendment, as construed in Apprendi and Blakely, precludes the mode of proceeding chosen by Oregon and several of its sister States. We hold, in light of historical practice and the authority of States over administration of their criminal justice systems, that the Sixth Amendment does not exclude Oregon’s choice.
I
A
State laws, as just observed, prescribe a variety of approaches to the decision whether a defendant’s sentences for distinct offenses shall run concurrently or consecutively. Oregon might have followed the prevailing pattern by placing the decision within the trial court’s discretion in all,[1] or almost all,[2] circumstances. Instead, Oregon and several-other States have adopted a more restrained approach: They provide for judicial discretion, but constrain its exercise. In these States, to impose consecutive sentences, judges must make certain predicate factfindings.[3]
*165 The controlling statute in Oregon provides that sentences shall run concurrently unless the judge finds statutorily described facts. Ore. Rev. Stat. § 137.123(1) (2007). In most cases, finding such facts permits — but does not require — the judge to order consecutive sentences.[4] Specifically, an Oregon judge may order consecutive sentences “[i]f a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct.” §137.123(2). If the offenses do arise from the same course of conduct, the judge may still impose consecutive sentences if she finds either:
“(a) That the criminal offense . . . was an indication of defendant’s willingness to commit more than one criminal offense; or
“(b) The criminal offense ... caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or ... to a different victim . . . .” § 137.123(5).
B
On two occasions between December 1996 and July 1997, respondent Thomas Eugene Ice entered an apartment in the complex he managed and sexually assaulted an 11-year-old girl. 343 Ore. 248,250,170 P. 3d 1049,1050 (2007). An Oregon jury convicted Ice of six crimes. For each of the two incidents, the jury found him guilty of first-degree burglary for entering with the intent to commit sexual abuse; first-degree sexual assault for touching the victim’s vagina; and first-degree sexual assault for touching the victim’s breasts. Ibid.
At sentencing, the judge made findings, pursuant to § 137.123, that permitted the imposition of consecutive sentences. First, the judge found that the two burglaries con *166 stituted “separate incident^].” Id., at 255,170 P. 3d, at 1053 (internal quotation marks omitted). Based on that finding, the judge had, and exercised, discretion to impose the two burglary sentences consecutively. Ibid.; see § 137.123(2).
Second, the court found that each offense of touching the victim’s vagina met the statutory criteria set forth in §137.123(5): Ice displayed a “willingness to commit more than one . . . offense” during each criminal episode, and his conduct “caused or created a risk of causing greater, qualitatively different loss, injury or harm to the victim.” Id., at 253, 170 P. 3d, at 1051 (internal quotation marks omitted). These findings gave the judge discretion to impose the sentence for each of those sexual assault offenses consecutive to the associated burglary sentence. The court elected to do so. Ibid. The court ordered, however, that the sentences for touching the victim’s breasts run concurrently with the other sentences. Ibid. In total, the court sentenced Ice to 340 months’ imprisonment. App. 46-87.*
[5]
Ice appealed his sentences. In relevant part, he argued that he had a Sixth Amendment right to have the jury, not the sentencing judge, find the facts that permitted the imposition of consecutive sentences. The appellate court affirmed the trial court’s judgment without opinion. 178 Ore. App. 415, 39 P. 3d 291 (2001).
The Oregon Supreme Court granted Ice’s petition for review and reversed, 4 to 2. 343 Ore., at 250, 170 P. 3d, at 1050.[6] In the majority’s view, the rule of Apprendi applied, because the imposition of consecutive sentences increased “the quantum of punishment” imposed. 343 Ore., at 265,170 *167 P. 3d, at 1058. The dissenting justices concluded that “[n]either the holding in Apprendi nor its reasoning supported] extending that decision to the question of consecutive sentencing.” Id., at 267, 170 P. 3d, at 1059 (opinion of Kistler, J.). State high courts have divided over whether the rule of Apprendi governs consecutive-sentencing decisions.[7] We granted review to resolve the question. 552 U. S. 1256 (2008).
II
The Federal Constitution’s jury-trial guarantee assigns the determination of certain facts to the jury’s exclusive province. Under that guarantee, this Court held in Apprendi, “any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U. S., at 490.
We have applied Apprendi’s rule to facts subjecting a defendant to the death penalty, Ring v. Arizona, 536 U. S. 584, 602, 609 (2002), facts allowing a sentence exceeding the “standard” range in Washington’s sentencing system, Blakely, 542 U. S., at 304-305, and facts prompting an elevated sentence under then-mandatory Federal Sentencing Guidelines, United States v. Booker, 543 U. S. 220, 244 (2005). Most recently, in Cunningham v. California, 549 U. S. 270 (2007), we applied Apprendi’s rule to facts permitting imposition óf an “upper term” sentence under California’s determinate sentencing law. All of these decisions involved sentencing for a discrete crime, not — as here — for multiple offenses different in character or committed at different times.
Our application of Apprendi’s rule must honor the “longstanding common-law practice” in which the rule is rooted. *168 Cunningham, 549 U. S., at 281. The rule’s animating principle is the preservation of the jury’s historic role as a bulwark between the State and the accused at the trial for an alleged offense. See Apprendi, 530 U. S., at 477. Guided by that principle, our opinions make clear that the Sixth Amendment does not countenance legislative encroachment on the jury’s traditional domain. See id., at 497. We accordingly considered whether the finding of a particular fact was understood as within “the domain of the jury ... by those who framed the Bill of Rights.” Harris v. United States, 536 U. S. 545, 557 (2002) (plurality opinion). In undertaking this inquiry, we remain cognizant that administration of a discrete criminal justice system is among the basic sovereign prerogatives States retain. See, e. g., Patterson v. New York, 432 U. S. 197, 201. (1977).
These twin considerations — historical practice and respect for state sovereignty — counsel against extending Apprendi’s rule to the imposition of sentences for discrete crimes. The decision to impose sentences consecutively is not within the jury function that “extends down centuries into the common law.” Apprendi, 530 U. S., at 477. Instead, specification of the regime for administering multiple sentences has long been considered the prerogative of state legislatures.
A
The historical record demonstratés that the jury played no role in the decision to impose sentences consecutively or concurrently. Rather, the choice rested exclusively with the judge. See, e. g., 1 J. Bishop, Criminal Law § 636, pp. 649-650 (2d ed. 1858) (“[W]hen there are two or more convictions, on which sentence remains to be pronounced; the judgment may direct, that each succeeding period of imprisonment shall commence on the termination of the period next preceding.”); A. Campbell, Law of Sentencing §9:22, p. 425 (3d ed. 2004) (“Firmly rooted in common law is the principle that the selection of either concurrent or consecutive sentences *169 rests within the discretion of sentencing judges.”). This was so in England before the founding of our Nation,[8] and in the early American States.[9] Ice “has no quarrel with [this account] of consecutive sentencing practices through the ages.” Brief for Respondent 32. The historical record further indicates that a judge’s imposition of consecutive, rather than concurrent, sentences was the prevailing practice.[10]
In light of this history, legislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in Apprendi. There is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury’s domain as a bulwark at trial between the State and the accused. Instead, the defendant — who historically may have faced consecutive sentences by default — has been granted by some modern legislatures statutory protections meant to temper the harshness of the historical practice.
*170 It is no answer that, as Ice argues, “he was ‘entitled’ to” concurrent sentences absent the factfindings Oregon law requires. Brief for Respondent 43. In Ice’s view, because “the Oregon Legislature deviated from tradition” and enacted a statute that hinges consecutive sentences on fact-findings, Apprendi’s rule must be imported. Brief for Respondent 33. As we have described, the scope of the constitutional jury right must be informed by the historical role of the jury at common law. See, e. g., Williams v. Florida, 399 U. S. 78, 98-100 (1970). It is therefore not the case that, as Ice suggests, the federal constitutional right attaches to every contemporary state-law “entitlement” to predicate findings.
For similar reasons, Cunningham, upon which Ice heavily relies, does not control his case. As stated earlier, we held in Cunningham that the facts permitting imposition of an elevated “upper term” sentence for a particular crime fell within the jury’s province. 549 U. S., at 274 (internal quotation marks omitted). The assignment of such a finding to the sentencing judge implicates Apprendi’s core concern: a legislative attempt to “remove from the [province of the] jury” the determination of facts that warrant punishment for a specific statutory offense. Apprendi, 530 U. S., at 490 (internal quotation marks omitted). We had no occasion to consider the appropriate inquiry when no erosion of the jury’s traditional role was at stake. Cunningham thus does not impede our conclusion that, as' Apprendi’s core concern is inapplicable to the issue at hand, so too is the Sixth Amendment’s restriction on judge-found facts.
B
States’ interest in the development of their penal systems, and their historic dominion in this area, also counsel against the extension of Apprendi that Ice requests. Beyond question, the authority of States over the administration of their criminal justice systems lies at the core of their sovereign status. See, e. g., Patterson, 432 U. S., at 201 (“It goes with *171 out saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government.”). We have long recognized the role of the States as laboratories for devising solutions to difficult legal problems. See New State Ice Co. v. Liebmann, 285 U. S. 262, 311 (1932) (Brandeis, J., dissenting). This Court should not diminish that role absent impelling reason to do so.
It bears emphasis that state legislative innovations like Oregon’s seek to rein in the discretion judges possessed at common law to impose consecutive sentences at will. Limiting judicial discretion to impose consecutive sentences serves the “salutary objectives” of promoting sentences proportionate to “the gravity of the offense,” Blakely, 542 U. S., at 308, and of reducing disparities in sentence length, see 6 W. La-Fave, J. Israel, N. King, & O. Kerr, Criminal Procedure § 26.3(f) (3d ed. 2007). All agree that a scheme making consecutive sentences the rule, and concurrent sentences the exception, encounters no Sixth Amendment shoal. To hem in States by holding that they may not equally choose to make concurrent sentences the rule, and consecutive sentences the exception, would make scant sense. Neither Apprendi nor our Sixth Amendment traditions compel strait jacketing the States in that manner.
Further, it is unclear how many other state initiatives would fall under Ice’s proposed expansion of Apprendi. As 17 States have observed in an amici brief supporting Oregon, States currently permit judges to make a variety of sentencing determinations other than the length of incarceration. Trial judges often find facts about the nature of the offense or the character of the defendant in determining, for example, the length of supervised release following service of a prison sentence; required attendance at drug rehabilitation programs or terms of community service; and the imposition of statutorily prescribed fines and orders of restitution. See Brief for State of Indiana et al. as Amici Curiae 11. Intruding Apprendi’s rule into these decisions *172 on sentencing choices or accoutrements surely would cut the rule loose from its moorings.
Moreover, the expansion that Ice seeks would be difficult for States to administer. The predicate facts for consecutive sentences could substantially prejudice the defense at the. guilt phase of a trial. As a result, bifurcated or trifurcated trials might often prove necessary. Brief for State of Indiana, supra, at 14-15. We will not so burden the Nation’s trial courts absent any genuine affront to Apprendi's instruction.
We recognize that not every state initiative will be in harmony with Sixth Amendment ideals. But as we have previously emphasized, “structural democratic constraints exist to discourage legislatures from” pernicious manipulation of the rules we articulate. Apprendi, 530 U. S., at 490, n. 16. In any event, if confronted with such a manipulation, “we would be required to question whether the [legislative measure] was constitutional under this Court’s prior decisions.” Id., at 491, n. 16. The Oregon statute before us today raises no such concern.
Ill
Members of this Court have warned against “wooden, unyielding insistence on expanding the Apprendi doctrine far beyond its necessary boundaries.” Cunningham, 549 U. S., at 295 (Kennedy, J., dissenting). The jury-trial right is best honored through a “principled rationale” that applies the rule of the Apprendi cases “within the central sphere of their concern.” 549 U. S., at 295. Our disposition today — upholding an Oregon statute that assigns to judges a decision that has not traditionally belonged to the jury — is faithful to that aim.
* * *
For the reasons stated, the judgment of the Oregon Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

 E. g., Connecticut (Conn. Gen. Stat. § 53a-37 (2005)); Idaho (Idaho Code § 18-308- (Lexis 2004)); Nebraska (Neb. Rev. Stat. §29-2204 (1995)). See generally Brief for National Association of Criminal Defense Lawyers as Amicus Curiae 9, n. 6 (listing laws of nine other States).

 E. g., Florida (Fla. Stat. §921.16 (2007)); Kansas (Kan. Stat. Ann. §21-4608 (2007)); Mississippi (Miss. Code Ann. § 99-19-21 (2007)).

 E.g., Maine (Me. Rev. Stat. Ann., Tit. 17-A, §1256 (2006); State v. Keene, 2007 ME 84, 927 A. 2d 398); Tennessee (Tenn. Code Ann. § 40-35-115(b) (2006); State v. Allen, 259 S. W. 3d 671 (Tenn. 2008)); Oregon (Ore. Rev. Stat. § 137.123 (2007)).

 Sentences must run consecutively, however, “[w]hen a defendant is sentenced for a crime committed while the defendant was incarcerated.” Ore. Rev. Stat. § 137.123(3).

 Had the judge ordered concurrent service of all sentences, Ice’s time in prison would have been 90 months. App. 68, 75.

 Preliminarily, the Oregon Supreme Court ruled unanimously that the consecutive-sentencing findings did not constitute elements of any specific crime, and therefore the jury-trial right safeguarded by the Oregon Constitution was not violated. 343 Ore. 248, 261-262, 170 P. 3d 1049, 1056 (2007).

 Compare, e. g., People v. Wagener, 196 Ill. 2d 269,283-286, 752 N. E. 2d 430, 440-442 (2001) (holding that Apprendi does not apply); Keene, 927 A. 2d, at 405-408 (same), with State v. Foster, 109 Ohio St. 3d 1, 2006-Ohio-856, 845 N. E. 2d 470 (holding Apprendi applicable).

 E. g., King v. Wilkes, 19 How. St. Tr. 1075, 1132-1136 (1770); see also Lee v. Walker, [1985] 1 Q. B. 1191, 1201 (C. A. 1984) (“[T]he High Court has always had inherent jurisdiction to impose consecutive sentences of imprisonment in any appropriate case where the court had power to imprison.”).

 E.g., Russell v. Commonwealth, 7 Serg. & Rawle 489, 490 (Pa. 1822) (Judicial imposition of consecutive sentences has been “the common practice in the Courts of this State,” and it is “warranted by principle, practice, and authority.”); In re Walsh, 37 Neb. 454, 456, 55 N. W. 1075, 1076 (1893) (“[T]he great weight of authority is in favor of the proposition that... the court has power to impose cumulative sentences.”); In re Breton, 93 Me. 39, 42, 44 A. 125, 126 (1899) (same); Howard v. United States, 75 F. 986, 993 (CA6 1896) (“[A] rule which denies the court the power to impose cumulative sentences turns the trial and conviction on all the indictments except one into an idle ceremony.”).

 E. g., Queen v. Cutbush, L. R. 2 Q. B. 379, 382, 10 Cox Crim. Cas. 489, 492 (1867) (“[R]ight and justice require [that] when a man has been guilty of separate offences, . . . that he should not escape from the punishment due to the additional offence, merely because he is already sentenced to be imprisoned for another offence.”); ibid, (noting that it had been the practice to impose consecutive sentences “so far as living judicial memory goes back”).