#27252-a-GAS

**2015 S.D. 60**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

SIERRA C. ANDERSON,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE GREGORY J. STOLTENBURG
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JARED TIDEMANN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                     and appellee.

BENJAMIN L. KLEINJAN of
Helsper, McCarty, Mahlke
  & Kleinjan, P.C.
Brookings, South Dakota                    Attorneys for defendant
                                     and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 26, 2015

OPINION FILED **07/15/15**

#27252

SEVERSON, Justice

[¶1.]         Sierra Anderson appeals the circuit court's departure from

presumptive probation.  She contends that her sentence for a term of imprisonment

violates her constitutional right to a jury trial because the court departed from

presumptive probation based on facts that were neither found by a jury nor

admitted by Anderson.  We affirm.

## Background

[¶2.]         Sierra Anderson, who was 22 years of age at the time, sold three-

quarters of a gram of methamphetamine to a confidential informant.  After the sale,

law enforcement executed a search warrant and found a remaining quarter of a

gram in her purse.  The charges brought against Anderson included a charge for

distribution of a schedule I or II substance and a charge for possession of a

controlled substance.  Anderson pleaded guilty to both offenses.  On the distribution

charge, the court sentenced Anderson to a term of six years in the penitentiary with

two years suspended.  That sentence is not being appealed.

[¶3.]         Possession of a controlled substance, the second charge, is prohibited

by SDCL 22-42-5 and is a class 5 felony.  A class 5 felony is punishable by a

maximum of five years imprisonment and a fine of ten thousand dollars.  SDCL 22-

6-1.  However, SDCL 22-6-11 directs judges to sentence an offender convicted of a

class 5 or class 6 felony to probation, unless the offender is convicted under certain

enumerated statutes.  SDCL 22-42-5 is not one of the exceptions.  Nonetheless,

SDCL 22-6-11 further provides that "[t]he sentencing court may impose a sentence

other than probation if the court finds aggravating circumstances exist that pose a

significant risk to the public and require a departure from presumptive probation under this section."

[¶4.]        Instead of imposing probation, the circuit court imposed a sentence of four years in the penitentiary, with two years suspended. The court stated that the following aggravating circumstances warranted a departure: (1) Anderson pleaded guilty to distribution of a controlled substance, (2) she was unemployed and had a history of sporadic employment, (3) she violated probation as a juvenile, and (4) she was not a good candidate for probation and would require a high-supervision level if placed on probation. Anderson now appeals the court's sentence on the possession charge. She asserts that the court's departure from presumptive probation in this case is unconstitutional.

## Standard of Review

[¶5.]        We review challenges to the constitutionality of a statute de novo. *State v. Outka*, 2014 S.D. 11, ¶ 24, 844 N.W.2d 598, 606. There is a strong presumption that statutes are constitutional. *Id.* "To be invalidated a statute must be proved a breach of legislative power beyond a reasonable doubt. Only when the unconstitutionality of a statute is plainly and unmistakably shown will we declare it repugnant to our Constitution." *Id.* (quoting *State v. Stark*, 2011 S.D. 46, ¶ 10, 802 N.W.2d 165, 169). However, "[i]f a statute can be construed so as not to violate the Constitution, that construction must be adopted." *Id.*

## Analysis

[¶6.]        South Dakota's presumptive probation statute provides in full:

> The sentencing court shall sentence an offender convicted of a
> Class 5 or Class 6 felony, except those convicted under §§ 22-

> 11A-2.1, 22-18-1, 22-18-1.05, 22-18-26, 22-19A-1, 22-19A-2, 22-19A-3, 22-19A-7, 22-19A-16, 22-22A-2, 22-22A-4, 22-24A-3, 22-22-24.3, 22-24-1.2, 22-24B-2, 22-24B-12, 22-24B-12.1, 22-24B-23, 22-42-7, subdivision 24-2-14(1), 32-34-5, and any person ineligible for probation under § 23A-27-12, to a term of probation. The sentencing court may impose a sentence other than probation if the court finds aggravating circumstances exist that pose a significant risk to the public and require a departure from presumptive probation under this section. If a departure is made, the judge shall state on the record at the time of sentencing the aggravating circumstances and the same shall be stated in the dispositional order. Neither this section nor its application may be the basis for establishing a constitutionally protected liberty, property, or due process interest.

SDCL 22-6-11. Anderson maintains that this statute is unconstitutional in light of the United States Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and the line of cases that have followed. *See Alleyne v. United States*, ___ U.S. ____, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013); *Oregon v. Ice*, 555 U.S. 160, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009); *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[¶7.]        In *Apprendi,* the Supreme Court struck down a New Jersey sentencing scheme that allowed judges to give an increased sentence term to a defendant if the judge found that the defendant committed a crime with a certain purpose. 530 U.S. at 468-69, 120 S. Ct. at 2351. The defendant in *Apprendi* pleaded guilty to "possession of a firearm for an unlawful purpose," a second-degree offense punishable by imprisonment "between five years and 10 years." *Id.* at 468-69, 120 S. Ct. at 2351-52. A separate statute allowed an "'extended term' of imprisonment if the trial judge [found], by a preponderance of the evidence, that 'the defendant . . . acted with a purpose to intimidate an individual or group of individuals because of

race, color, gender, handicap, religion, sexual orientation or ethnicity.'" *Id.* at 468-69, 120 S. Ct. at 2351. The Supreme Court found that enhancement based on a judge's fact-finding unconstitutionally "remove[d] from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Id.* at 490, 120 S. Ct. at 2363. It explained:

> If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached.

*Id.* at 484, 120 S. Ct. at 2359. Therefore, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S. Ct. at 2362-63.

[¶8.] The Supreme Court has further explained that "[a] 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303, 124 S. Ct. at 2537. However, the Supreme Court clarified that "[i]f appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. Even a defendant who stands trial may consent to judicial factfinding as to sentence enhancements, which may well be in his interest if relevant evidence would prejudice him at trial." *Id.* at 310, 124 S. Ct. at 2541.

[¶9.]    More recently, the Supreme Court has held *Apprendi* inapplicable to a sentencing scheme that requires concurrent sentencing absent additional fact finding by a court.  *Ice*, 555 U.S. at 169, 129 S. Ct. at 718.  In *Ice*, the Supreme Court explained that *Apprendi's* rule and its application in the cases that followed were distinguishable from a scheme that allowed departure from concurrent sentencing of multiple crimes because "[a]ll of th[o]se decisions involved sentencing for a discrete crime, not—as here—for multiple offenses different in character or committed at different times." *Id.* at 167, 129 S. Ct. at 717.  It explained that "twin considerations—historical practice and respect for state sovereignty—counsel against extending *Apprendi's* rule to the imposition of sentences for discrete crimes. The decision to impose sentences consecutively is not within the jury function that 'extends down centuries into the common law.'" *Id.* at 168, 129 S. Ct. at 717 (citing *Apprendi*, 530 U.S. at 477, 120 S. Ct. at 2348).  The Supreme Court surveyed the history of imposing sentences and determined:

> There is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the State and the accused. Instead, the defendant—who historically may have faced consecutive sentences by default—has been granted by some modern legislatures statutory protections meant to temper the harshness of the historical practice.

*Id.* at 161, 129 S. Ct. at 713.  The Court reiterated that the "core concern" of *Apprendi* is "a legislative attempt to 'remove from the province of the jury' the

determination of facts that warrant punishment for a specific statutory offense." *Id.* at 170, 129 S. Ct. at 718. [1]

[¶10.]    Finally, the Supreme Court has addressed *Apprendi* in two additional cases. In *Alleyne*, the Supreme Court applied *Apprendi* to mandatory minimum sentences—those that set a "floor" on a sentence. ___ U.S. at ____, 133 S. Ct. at 2158. *Alleyne* overruled previous decisions where the Supreme Court had determined that a difference existed between facts that increase a mandatory maximum sentence and facts that increase a mandatory minimum sentence. *See Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002), *overruled by Alleyne*, __ U.S. at __, 133 S. Ct. at 2163. The Court has also applied *Apprendi* to the imposition of civil fines. *Southern Union Co. v. United States*, ___U.S.___, 132 S. Ct. 2344, 2352 n.5, 183 L. Ed. 2d 318 (2012).

[¶11.]    When confronted with a question of whether the jury must make certain factual findings, the Supreme Court has told us that "the scope of the constitutional jury right must be informed by the historical role of the jury at common-law. It is therefore *not* the case that . . . the federal constitutional right

---

1.    Before the Supreme Court issued its opinion in *Ice*, at least two state supreme courts and one state appellate court addressed whether departure from presumptive probation requires a jury determination. *See State v. Carr*, 53 P.3d 843, 846-47 (Kan. 2002) (holding that the right to a jury does not extend to upward dispositional departures, only upward durational departures); *State v. Allen*, 706 N.W.2d 40, 47 (Minn. 2005) ("[U]pward dispositional departure upon finding an aggravating factor without the aid of jury . . . [was] unconstitutional as applied."); *State v. Buehler*, 136 P.3d 64, 65-66 (Or. Ct. App. 2006) (holding that additional fact-finding necessary to impose anything more than presumptive sentence of probation "must conform to the requirements elucidated in *Blakely* and *Apprendi*").

attaches to every contemporary state-law 'entitlement' to predicate findings." *Ice*, 555 U.S. at 170, 129 S. Ct. at 718 (emphasis added). Therefore, even though South Dakota's presumptive probation statute requires the determination of predicate circumstances before imposition of a prison term, if "[t]here is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the State and the accused[,]" then sentencing a defendant based on those judge-found factors is not a violation of *Apprendi*. *See Id.* at 169, 129 S. Ct. at 713.

[¶12.]  Under the common law, probation was developed and granted by judges; "the modern humane practice of probation was developed in Massachusetts by judges as a natural part of the business of administering justice[.]" Frank W. Grinnell, *The Common Law History of Probation-An Illustration of the Equitable Growth of Criminal Law*, 32 J. Crim. L. & Criminology 15, 30 (1941). "It was . . . through judicial experiment, which was evidently believed to be within the common law powers of Massachusetts judges, that the principle of probation was applied experimentally in practice until, as a result of gradually forming public opinion, the practice became so generally approved that the legislature took it up and provided for its development . . . ." *Id.* at 28 (citing *Com. v. Dowdican's Bail*, 115 Mass. 133, 136 (1874)). Thus, the judge, rather than the jury, traditionally decided which circumstances warranted probation rather than imprisonment. Likewise, the Supreme Court has recognized that "[p]robation, like incarceration, is 'a form of criminal sanction imposed *by a court* upon an offender *after* verdict, finding, or plea of guilty.'" *United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 591, 151 L.

Ed. 2d 497 (2001) (emphasis added) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S. Ct. 3164, 3169, 97 L. Ed. 2d 709 (1987)). By the time that a sentencing court is determining whether probation is appropriate for the offense committed, the jury has already performed its historic function—"determining whether the prosecution has proved each element of an offense beyond a reasonable doubt." *Ice*, 555 U.S. at 163, 129 S. Ct. at 714.

[¶13.] The history of probation as an innovative alternative to incarceration—developed by judges and then legislatively approved—confirms that it is a prime example of "the role of the States as laboratories for devising solutions to difficult legal problems." *Id.* at 171, 129 S. Ct. at 718-19. The Supreme Court has recognized that "[b]eyond question, the authority of the States over the administration of their criminal justice systems lies at the core of their sovereign status. *See e.g., Patterson v. New York*, 432 U.S. 197, 201, 97 S. Ct. 2319, 2322, 53 L. Ed. 2d 281 (1977) ('It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government.')." *Ice*, 555 U.S. at 170-71, 129 S. Ct. at 718. South Dakota has also recognized that "[p]robation . . . is an alternative to confinement in cases where the [sentencing court] deems that both the defendant and the public would benefit." *State v. Marshall*, 247 N.W.2d 484, 487 (S.D. 1976). It allows an offender an opportunity to rehabilitate and protects the public "through supervision by a probation officer and the continuing jurisdiction of the [circuit] court to revoke probation[.]" *Id.* Consequently, when sentencing courts determine facts relevant to probation, the courts are properly administering the criminal justice system rather than

"encroach[ing] . . . upon facts historically found by the jury[.]" *See Ice*, 555 U.S. at 169, 129 S. Ct. at 718.

[¶14.] Those "twin considerations—historical practice and respect for state sovereignty—counsel against extending *Apprendi*'s rule to the imposition of" a sentence of probation. *Ice*, 555 U.S. at 168, 129 S. Ct. at 717. When a sentencing court finds the facts necessary to impose a prison term rather than that of probation, the core concern of *Apprendi*—"a legislative attempt to 'remove from the province of the jury' the determination of facts that warrant punishment for a specific statutory offense[,]"—is not implicated. *Ice*, 555 U.S. at 170, 129 S. Ct. at 718. South Dakota's presumptive probation statute "seek[s] to rein in the discretion judges possessed at common law to impose" probation and "serves the 'salutary objectives' of promoting sentences proportionate to 'the gravity of the offense,' and of reducing disparities in sentence length." *See id.* (citing *Blakely*, 542 U.S. at 308, 124 S. Ct. at 2531).

[¶15.] Our decision is consistent with Supreme Court cases recognizing that there is no right to a jury trial for probation revocation. "[P]robationers . . . face revocation of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply[.]" *Knights*, 534 U.S. at 120, 122 S. Ct. at 592. In both cases—initially denying probation and revoking probation—the court is determining whether incarceration is appropriate, and it is within the court's purview to decide facts relevant to that decision. Further, such a decision does not alter the range of years of imprisonment that a court may impose for a particular offense.

[¶16.] Lastly, this case exemplifies the sentencing court's role in administering the criminal justice system and fashioning a sentence within the legislative and constitutional framework. Anderson faced multiple sentences in this case. She pleaded guilty to distribution of a schedule I or II substance—a class 4 offense carrying a mandatory penitentiary sentence of at least one year.[2] SDCL 22-42-2. Anderson was sentenced to six years in the penitentiary with two years suspended for the distribution charge and could not have been placed on probation for the possession charge because doing so would have subjected her to simultaneous supervision of the executive and judicial branches.[3] We have previously reversed such sentences. *See State v. McConnell*, 495 N.W.2d 658 (S.D. 1993) ("[C]oncurrent penitentiary term and probation requirement effectively put [defendant] under simultaneous supervision of both the executive and judicial branches of government. . . . a defendant convicted of a crime should not be under simultaneous supervision of agencies of two separate branches of government."). "[S]pecification of the regime for administering multiple sentences has long been considered the prerogative of state legislatures." *Ice*, 555 U.S. at 168, 129 S. Ct. at 717. Therefore, the sentencing court appropriately sentenced Anderson. We affirm.

---

2. A sentencing court can depart from the penitentiary sentence if it "finds that mitigating circumstances exist which require a departure[.]" SDCL 22-42-2.3.

3. Defendants sentenced to the state penitentiary are under the supervision of the executive branch, *see* South Dakota Constitution article IV, § 9; SDCL chapter 1-15, while those sentenced to probation are under the supervision of the judicial branch, *see* South Dakota Constitution article V, § 5; SDCL chapter 23A-27.

#27252

[¶17.]    GILBERTSON, Chief Justice, and ZINTER, WILBUR, and KERN, Justices, concur.