Filed 9/15/23  P. v. Evans CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARQUES TERREL EVANS,<br><br>Defendant and Appellant. | B320205<br><br>(Los Angeles County Super. Ct. No. TA144389) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Allen Joseph Webster, Jr., Judge.  Affirmed as modified.

Brad Kaiserman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Yun K. Lee, Deputy Attorney General, for Plaintiff and Respondent.

A jury found defendant and appellant Marques Terrel Evans (defendant) guilty of numerous sex crimes committed against two different women. In an earlier appeal, we affirmed his convictions and remanded for resentencing. On remand, the trial court imposed an aggregate prison term of 68 years to life in prison. In this appeal from the resentencing, defendant principally presents a claim of sentencing error recently rejected by our Supreme Court in *People v. Catarino* (2023) 14 Cal.5th 748. In addition, defendant asks us to decide whether the trial court prejudicially erred in imposing an upper term concurrent sentence for one of defendant's convictions in the absence of an aggravating circumstance finding by the jury, whether another remand is required so that the court may consider already-existing alternatives to incarceration as urged by a newly enacted penal statute, and whether fines and assessments were erroneously imposed.

## I. BACKGROUND

### A. *Defendant's Convictions and Initial Sentencing*

A trial jury convicted defendant of committing multiple offenses against Abigail S. (Abigail), an acquaintance he invited to his home in July 2017: forcible rape (Pen. Code,[1] § 261, subd. (a)(2)) (count 14), forcible oral copulation (former § 288a, subd. (c)(2)(A)) (count 15), and misdemeanor false imprisonment (§ 236) (count 16). The jury also convicted defendant of committing several crimes against Ariel R. (Ariel), an exotic dancer/masseuse who he lured to his home in October 2017: assault with a firearm

---

[1] Undesignated statutory references that follow are to the Penal Code.

(§ 245, subd. (a)(2)) (count 1), forcible oral copulation (former § 288a, subd. (c)(2)(A)) (counts 6 and 11), sexual penetration by a foreign object (count 7), criminal threats (§ 422, subd. (a)) (count 9), assault with intent to commit a sexual offense (§ 220, subd. (a)(1)) (count 19), battery with serious bodily injury (§ 243, subd. (d)) (count 20), and false imprisonment of a hostage (§ 210.5) (count 22). In addition, the jury found defendant guilty of offenses committed against Ariel's driver: assault with a firearm (§ 245, subd. (a)(2)) (count 2) and criminal threats (§ 422, subd. (a)) (count 21). The jury also found true sentence enhancement allegations that defendant used a firearm, inflicted great bodily injury, and committed sexual offenses against more than one victim.

The trial court initially sentenced defendant to an aggregate prison term of 155 years to life (a 50-year determinate sentence plus 105 years to life). On direct appeal, we affirmed defendant's convictions but remanded for resentencing due to a misapplication of the One Strike law (§ 667.61). (*People v. Evans* (Jun. 30, 2021, B302308) [nonpub. opn.].)

### B.    *Defendant's Resentencing*

At resentencing, the prosecution urged the trial court to sentence defendant to at least 95 years to life in prison. The defense asked the court to impose a sentence of 68 years to life. Defendant also personally addressed the court at great length (over an hour) and remarked on: what he believed to be mitigating considerations, his use of drugs and alcohol at the time of the crimes of conviction, complaints about guards and inmates while he had been held in custody, his trial attorney's

3

failure to investigate, and complaints about the trial evidence and procedure. He also professed his innocence.[2]

The trial court responded to defendant's allocution and emphasized defendant's lack of remorse for his crimes, his failure to accept responsibility for his own conduct, and his difficulty understanding that his cited mitigation, even if true, still did not justify his criminal conduct. The court also explained it would be imposing a sentence to do justice, which required "a sentence that balances what's best for you and fair to you and what's fair to the victims and the [P]eople."

The trial court imposed the sentence recommended by the defense: 68 years to life in prison. On the forced oral copulation conviction in count 6, which was used as the base term, the court sentenced defendant to 25 years to life. The court then ordered the following sentences to run consecutive to that term: one year (one-third of the middle term) for assault with a firearm in count 2, 25 years to life for sexual penetration by a foreign object in count 7, 15 years to life for rape in count 14, and two years for assault with intent to commit a sexual offense in count 19. The remainder of the counts of conviction were ordered to run concurrently, including an eight-year upper term sentence on count 22, the false imprisonment of a hostage conviction. The court struck all of the sentencing enhancements the jury found true and, without any ability to pay objection from the defense, imposed various fines, fees, and assessments.

---

[2]     For example: "There's no way in hell you can truly, absolutely believe I did all of these things, just no way. Yeah, the jury voted, but even they, from their questions and deliberations, showed how confused they actually were."

## II. DISCUSSION

Defendant contends his Sixth Amendment right to a jury trial was violated when the trial court relied on facts not found by the jury to order the indeterminate sentences on counts 6 and 7 to run consecutively. Our Supreme Court recently held in *Catarino* that section 667.6 subdivision (d) does not run afoul of the Sixth Amendment in requiring that a sentencing court impose "full, separate, and consecutive term[s]" for particular sex crimes if they were committed on separate occasions. (*Catarino*, *supra*, 14 Cal.5th at 750; see also *Oregon v. Ice* (2009) 555 U.S. 160, 167-168; *People v. Wandrey* (2022) 80 Cal.App.5th 962, 978-980.) In so holding, the *Catarino* court disapproved *People v. Johnson* (2023) 88 Cal.App.5th 487, the California appellate decision upon which defendant relies. (*Catarino*, *supra*, at 757.) In light of our Supreme Court's guidance (and the evidence fully justifying the implied factual findings that support the statutory predicate for consecutive sentencing), we reject defendant's Sixth Amendment contention without need for further discussion.

Reversal is not required for any of defendant's other sentencing contentions either. The error in sentencing defendant to the upper term on count 22 without a supporting jury finding of aggravating circumstances was harmless because only a concurrent sentence was imposed on that count and because we are in any event confident the court would have imposed the same sentence based on an aggravating factor the jury would have surely found true. Remand is also unnecessary to address recently enacted section 17.2, which urges courts to consider alternatives to incarceration. We have some doubts about the Attorney General's concession that the statute applies retroactively to defendant (the terms of the statute appear

5

hortatory and create no new avenue for reduced punishment), but even assuming retroactive application, the record is clear that the trial court would not impose a non-custodial sentence in this case. Finally, defendant's challenge to the financial components of his sentence under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 is forfeited for lack of a contemporaneous objection, and the associated perfunctory assertion of ineffective assistance of counsel fails because the appellate record does not reveal counsel could have no valid reason to refrain from objecting.

> A. *The Upper Term Sentence on the Count 22 False Imprisonment of a Hostage Conviction Is Harmless Error*
>
> 1. *Additional background*

After Ariel entered defendant's partially furnished garage during the early morning hours of October 1, 2017, defendant offered her what she believed to be cocaine; she declined. Defendant then demanded she have sex with him. When she refused, defendant grabbed a pistol and ordered her to undress. When she again refused, defendant snatched her phone, struck her in the head with the handgun, beat her with his fists, and choked her until she passed out.

When Ariel regained consciousness, defendant again ordered her to strip. After she complied, defendant digitally penetrated her vagina and anus as she lay on a couch. At gunpoint, he then ordered her to kneel on the garage's floor, where he repeatedly forced her to orally copulate him. The forced oral sex was interrupted on several occasions when defendant got up from the couch to check a computer monitor which displayed a video feed from several external security cameras.

6

After police arrived outside of the home in response to a call from Ariel's driver, defendant started to panic. He dragged Ariel, naked, from one room in his house to another. Eventually, he returned her clothes and allowed her to leave the house.[3]

Paramedics treated Ariel's head laceration and transported her to a local hospital where she received two staples in her scalp. Two days after defendant assaulted her, Ariel was treated by a sexual assault nurse who found (in addition to her head laceration and various bruises) injuries consistent with strangulation, forced oral copulation, and penetration of her vagina and anus with a foreign object; the nurse characterized the injuries to Ariel's mouth and genital area to be "significant" because they were present days after the assault.

At defendant's first sentencing hearing, the trial court found his criminal conduct to be as "horrific" and as "senseless" as any case it had previously presided over. In view of the jury's guilty verdict on all counts and true finding on all of the sentencing enhancements, the court denied the defense's request

---

[3] Abigail's experience shared features similar to Ariel's. When Abigail arrived at defendant's home late in the evening he invited her into the garage, where they talked and eventually had consensual oral and vaginal sex. After placing her clothes, car keys, phone, and other personal items out of her reach, defendant repeatedly invited Abigail to "do a line" of what appeared to be cocaine; when she refused, defendant became upset. When she told defendant she wanted to go home, he refused to return her clothes and effects to her and told her she could not leave until she performed more oral sex. Over the course of the next several hours defendant repeatedly forced Abigail to engage in vaginal and oral sex against her will.

7

for probation. In fashioning an appropriate sentence, the trial court cited the following aggravating factors: the crimes involved great bodily harm, and threats of great bodily harm (Cal. Rules of Court, rule 4.421(a)(1)), defendant was armed with a weapon and used it (Cal. Rules of Court, rule 4.421(a)(2)), the victims were vulnerable (Cal. Rules of Court, rule 4.421(a)(3)), and the manner in which defendant carried out the crimes exhibited planning, sophistication, or professionalism (Cal. Rules of Court, rule 4.421(a)(8)). As mitigating factors, the court considered defendant's insignificant record of criminal conduct (Cal. Rules of Court, rule 4.423(b)(1)), as well as his education and work history (Cal. Rules of Court, rule 4.423(c)).[4] The court found the circumstances in aggravation outweighed those in mitigation and imposed the upper term of eight years on count 22.

When resentencing defendant, the trial court again imposed the upper term on count 22. The court did not re-review the reasons for its choice of the upper term during the resentencing hearing, however; the only mention of the particular sentence on that count was in connection with whether the court intended it to run concurrently or consecutively (the court stated it was the former).

---

[4] The probation report prepared in advance of defendant's original sentencing hearing also listed four aggravating factors: (1) the crimes involved great violence and/or bodily injury; (2) the manner of the crimes indicated planning, sophistication, or professionalism; (3) defendant's violent conduct indicates a serious danger to society; and (4) defendant's criminality is of increasing seriousness. The report did not identify any mitigating factors.

### 2.	*Analysis*

"Pursuant to Senate Bill No. 567 [effective January 1, 2022], section 1170, subdivision (b) has been amended to make the middle term the presumptive sentence for a term of imprisonment; a court now must impose the middle term for any offense that provides for a sentencing triad unless 'there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.' (§ 1170, subd. (b)(1) & (2).)" (*People v. Lopez* (2022) 78 Cal.App.5th 459, 464.)  The Attorney General correctly concedes the amended version of section 1170 applies retroactively to defendant's case.

That said, the eight-year sentence on count 22 was ordered to run concurrently with the much longer indeterminate aggregate sentence imposed as a result of defendant's other convictions—and there is no challenge (or at least no meritorious challenge) to the other custodial components of defendant's sentence.  Section 1170 error in imposing the upper-term sentence on count 22 is therefore harmless because the sentence will run concurrently.  (*People v. Brockman* (1936) 15 Cal.App.2d 256, 258 ["If error arose in the decisions and judgments[,] it was rendered harmless by the act of the court in ordering the two sentences to be served concurrently"].)

The error was also harmless for another reason.  We will assume the more defendant-favorable standard of assessing harmlessness for asserted Senate Bill No. 567 error outlined in *Lopez* applies.  (*Lopez, supra,* 78 Cal.App.5th at 465-467; but see

9

*People v. Flores* (2022) 75 Cal.App.5th 495, 500-501 [less defendant-favorable standard].)  We are confident beyond a reasonable doubt that the jury would have found, as the trial court previously explained when first sentencing defendant, that "the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."  (Cal. Rules of Court, rule 4.421(a)(1).)  In addition, and after reviewing the court's and defendant's comments at sentencing and resentencing, we are convinced the trial court would have exercised its discretion to impose the same upper term sentence solely on the basis of this aggravating factor, i.e., even assuming for argument's sake that reliance on other factors was improper (*Lopez*, *supra*, at 467 & fn. 11).

> C. *Remand Pursuant to Section 17.2 Is Not Required Because the Record Clearly Indicates the Trial Court Would Not Sentence Defendant to a Less Restrictive Alternative to Incarceration*
> 1. *Additional background*

At the resentencing hearing, defendant asked the court not to sentence him to any additional prison time.  Instead, he asked the court to "make this a combination of time I've done in a mandatory supervision to appease the scheme of things [sic].  I'll do whatever programs available in here, if you let me, on the outside.  I'll even wear your ankle bracelet monitoring my life.  I'll play the probations and paroles for however long you'd like and with drug testing so you can see I stopped using the day I was arrested and no more a fan of it.  You can tag your drunk suspensions [sic] onto the max if need be.  But give me those

10

options to save my life and let me show you . . . that I nor any of us here will ever visit another situation of this . . . caliber ever again. I have truly been scared straight and you know I have. [¶] Just, please, allow me to return to my children . . . ."

The trial court rejected defendant's request for a sentence that would avoid incarceration. As the court put it, "[T]he law will not allow me to let you come home with an ankle[ ] bracelet and do drug rehab or something. You know, it's not going to happen."

### 2. Analysis

Four months after defendant was resentenced, section 17.2 was added to the Penal Code. (Assem. Bill No. 2167 (2021–2022 Reg. Sess.) § 2, added September 29, 2022.) The law took effect on January 1, 2023, eight months after defendant was resentenced. (Cal. Const., art. IV, § 8, subd. (c).) Section 17.2 provides: "(a) It is the intent of the Legislature that the disposition of any criminal case use the least restrictive means available. [¶] (b) The court presiding over a criminal matter shall consider alternatives to incarceration, including, without limitation, collaborative justice court programs, diversion, restorative justice, and probation. [¶] (c) The court shall have the discretion to determine the appropriate sentence according to relevant statutes and the sentencing rules of the Judicial Council." The Legislature's intent in enacting the new law was for a court presiding over a criminal matter to "impose an alternative to incarceration, except where incarceration is necessary to prevent physical injury to others or the interests of justice would best be served by incarceration." (Assem. Bill No. 2167 (2021-2022 Reg. Sess.) § 1.)

11

In this case, we will assume for the sake of argument that the Attorney General is correct to concede section 17.2 applies retroactively to defendant under principles first announced in *In re Estrada* (1965) 63 Cal.2d 740. A remand is still unwarranted. The trial court's comments at sentencing make it abundantly clear the court would not impose an incarceration-alternative sentence. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) Indeed, we can go further and say it would be an abuse of discretion to impose such a sentence on the facts here even if the court were inclined to do so.

> D.    *Defendant Forfeited His* Dueñas *Argument and Has Not Shown His Trial Attorney Was Ineffective by Not Objecting to Various Criminal Assessments and Fines*

Relying on *Dueñas, supra*, 30 Cal.App.5th 1157, defendant argues the imposition of court operations assessments, conviction assessments, and restitution fines was improper because the trial court did not consider his ability to pay. Defendant was re-sentenced in May 2022—more than three years after the Court of Appeal issued its opinion in *Dueñas*. Defendant concedes his trial attorney did not request an ability to pay determination and the record shows his attorney did not object to any of the fines, fees, or assessments.[5] The point is accordingly forfeited on appeal. (*People v. Flowers* (2022) 81 Cal.App.5th 680, 687.)

---

[5]    The defense's silence on the ability to pay issue came after we stated, in our prior opinion, that the trial court should consider with care "any objections the defense may make to [various] financial obligations."

12

Defendant additionally contends (albeit in a perfunctory manner) that the absence of an ability-to-pay objection by his trial attorney constitutes ineffective assistance of counsel. "'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. (*Strickland v. Washington* (1984) 466 U.S. 668, 694[ ]; *People v. Ledesma* (1987) 43 Cal.3d 171, 217[ ].)'" (*People v. Carter* (2005) 36 Cal.4th 1114, 1189.) We presume "'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant . . . bears the burden of establishing constitutionally inadequate assistance of counsel." (*Ibid*.) If the record on direct appeal "'sheds no light on why counsel acted or failed to act . . . ,'" a reviewing court must reject an ineffective assistance of counsel claim "'unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation.'" (*Ibid*.)

We reject defendant's ineffective assistance of counsel claim because the record is silent as to why counsel did not interpose an ability-to-pay objection and it is easy to hypothesize a satisfactory explanation for the absence of an objection. (See, e.g., *People v. Keene* (2019) 43 Cal.App.5th 861, 864-865 [rejecting defendant's "throwaway" argument that his trial counsel was ineffective by not objecting to various criminal fines and assessments: "We have no idea why counsel did not raise the ability to pay issue. . . . We

13

have no idea whether the fines, fees or assessments were of any consequence"].)

### E. *Modifications Are Required to the Resentencing Order and Abstract of Judgment*

At the resentencing hearing, the trial court stated the punishment for count 19 would be "one third [of the] midterm." The middle term for assault with intent to commit a sexual offense is four years. (§ 220, subd. (a)(1).) As a result, defendant should have been sentenced to 16 months on count 19, not two years. We order the minute order and the abstract of judgment to reflect that the correct sentence on count 19 is 16 months. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [holding reviewing courts have the inherent power on appeal to correct clerical errors found in court records, such as may be found in abstracts of judgment, whether on the court's own motion or upon application of the parties]; accord *People v. Jones* (2012) 54 Cal.4th 1, 89.)

The minute order from the resentencing hearing states that the sentence for count 11 was to "run consecutive" to counts 6 and 7. The reporter's transcript of the hearing, however, reflects that the trial court imposed a prison term for count 11 to run concurrent with the sentences in counts 6 and 7, a pronouncement that is accurately reflected in the abstract of judgment. Defendant and the Attorney General urge us to order the minute order be corrected to accurately reflect the concurrent sentence for count 11. Because the oral pronouncement of sentence controls, we so order. (*People v. Price* (2004) 120 Cal.App.4th 224, 242 ["Any discrepancy between the minutes and the oral pronouncement of a sentence is presumed to be the result

14

of clerical error. Thus, the oral pronouncement of sentence prevails in cases where it deviates from that recorded in the minutes"].) We further order that the minute order be corrected to reflect that the sentence on count 19 is to run consecutive, not "conservative," to count 6.

The trial court imposed seven court operations assessments ($210 in total) and seven criminal conviction assessments ($280 in total) for seven counts (counts 2, 6, 7, 11, 14, 15, and 19). Because defendant was convicted of 14 crimes (13 felonies and one misdemeanor) and because the law requires an assessment for each conviction, the court was required to impose a total of $420 in court operations assessments and $560 in criminal conviction assessments. (Gov. Code, § 70373, subd. (a); § 1465.8, subd. (a); *People v. El* (2021) 65 Cal.App.5th 963, 967 ["The trial court was required to impose . . . a $30 criminal conviction assessment under Government Code section 70373, and a $40 court operations assessment under . . . section 1465.8"].) Accordingly, we order the abstract of judgment to be corrected to reflect the proper amount of assessments. (*People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1530 ["Because the seven additional assessments, surcharge, and penalties are mandatory, their omission may be corrected for the first time on appeal"].) In addition, we direct that the minute order from the resentencing hearing, which did not reference any of the assessments or fines imposed, be modified to show all such assessments and their correct amounts.

15

DISPOSITION

The judgment is modified to impose a sentence of 16 months on count 19 to run consecutive to the 25 years to life sentence imposed in connection with count 6.  The judgment is modified further to reflect that the total amount owed in court operations assessments is $420 and the total amount owed in criminal conviction assessments is $560.  As so modified, the judgment is affirmed.  The clerk of the superior court is directed to deliver an amended abstract of judgment reflecting the modifications to the Department of Corrections and Rehabilitation, and to correct the May 9, 2022, minute order as specified in this opinion.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:


MOOR, J.


KIM, J.


16